BURGESS *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—PENSIONS—POLICEMEN AND FIREMEN—CHARTER AMENDMENT.

Pensions for plaintiffs, widows of policemen and firemen who became such widows before city charter amendment setting up a new pension and retirement system that was inconsistent with charter provisions theretofore existing and repealing such inconsistent provisions, became the direct obligation of the city, where no provision was made in the new system for continuance of plaintiffs' pensions (Detroit Charter, title 4, ch 15, § 16; ch 21, § 19; title 9, ch 7, art 4, § 1, art 9, § 5).

2. SAME—WIDOWS OF POLICEMEN AND FIREMEN—PENSIONS—CHARTER AMENDMENT.

Plaintiffs, widows of policemen and firemen who died prior to charter amendment setting up a new pension and retirement system, *held*, to have been excluded from the new system,

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur, Pensions § 31.
[2, 4] 40 Am Jur, Pensions § 20.
[3] 12 Am Jur, Constitutional Law § 478.
[5] 11 Am Jur, Constitutional Law § 141.

where record shows propositions including them and excluding them were presented to the city council and the council ordered a vote by the electorate only on the proposal which excluded class of which plaintiffs were members (Detroit Charter, title 4, ch 15, § 16; ch 21, § 19; title 9, ch 7, art 4, § 1, art 9, § 5).

3. SAME—CHARTERS—EQUAL PROTECTION.

The charter of a city is not unconstitutional because it is legislation of a particular kind or character, or because it benefits a particular class, so long as the charter operates equally upon those within the particular class.

4. SAME—CHARTERS—POLICEMEN AND FIREMEN—PENSIONS—WIDOWS.

City charter amendment, setting up a new pension and retirement system for policemen and firemen and specifically excluding class of which plaintiff widows were members from increased benefits accorded beneficiaries under previously existing system, *held*, not arbitrary nor unreasonable (Detroit Charter, title 9, ch 7, art 4, § 1, art 9, § 5).

5. CONSTITUTIONAL LAW—SUPREME COURT—LEGISLATION.

The Supreme Court will not question a legislative body's reasons for adopting a certain legislative measure unless the result is palpably arbitrary or unreasonable.

6. COSTS—PUBLIC QUESTION—POLICEMEN AND FIREMEN PENSION AND RETIREMENT PLAN—DECLARATION OF RIGHTS.

No costs are allowed in class suit for declaration of rights under city charter provisions for policemen and firemen pension and retirement plan, a public question being involved (Detroit Charter, title 4, ch 15, § 16; ch 21, § 19; title 9, ch 7, art 4, § 1, art 9, § 5).

Appeal from Wayne; Bowles (George E.), J. Submitted October 7, 1959. (Docket No. 20, Calendar No. 47,983.) Decided April 11, 1960.

Action by Cora Burgess, Cora Coy, Helene Johnstone, and others against the City of Detroit, a municipal corporation, division of policemen and firemen's pension committee, and certain city officials comprising pension and retirement committees, for declaratory judgment in respect to sums claimed due

them as widows. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Daniel G. Shea* and *Sidney E. Stephens,* for plaintiffs.

*Nathaniel H. Goldstick,* Corporation Counsel, and *Bert R. Sogge,* Assistant Corporation Counsel, for defendants.

KAVANAGH, J. This is a class action brought by plaintiffs for a declaratory judgment construing several sections of the charter of the city of Detroit These sections refer to the policemen and firemen retirement system. The plaintiffs are widows and beneficiaries of policemen and firemen killed in the performance of duty or receiving injuries resulting in death prior to July 1, 1941. Those plaintiffs who are widows and beneficiaries of firemen receive $100 per month pensions pursuant to section 16, chapter 15, title 4, of the charter, and those plaintiffs who are widows and beneficiaries of policemen receive a like amount pursuant to section 19, chapter 21, title 4, of the charter.*

Prior to a charter amendment made November 5, 1940, to be effective July 1, 1941, by chapter 7, title 9, of the charter, the provisions with reference to pensions and retirement and death benefits were under separate sections of the charter. The 1940 amendment provided a new joint plan for policemen and firemen including increased benefits, without disturbing the old plans. The new plan covered all policemen and firemen in service on the effective date of the act, which date was July 1, 1941, except those who had 20 or more years of service in either

---

\* For these, and other charter provisions referred to, see Municipal Code (1954), City of Detroit, charter section, particularly pp 89, 91, 114, 115, 244, 249, 254, 263.—REPORTER.

department. Any member who had 20 or more years of service was excluded, unless he filed with the board a written election to become a member of the new system. If he did not so elect, he retained for himself, wife, children, dependent mother, and dependent sister all rights and privileges provided by chapters 15 and 21 of title 4 of the charter, commonly referred to as the "old system." Plaintiffs' husbands were never members of this new system, since their husbands died prior to the effective date of the new system. Plaintiffs seek to have the benefits of the new system applied to the so-called old plans under chapters 15 and 21.

The trial court found as a fact that the city of Detroit had had considerable trouble with the firemen and policemen pension programs. The difficulty was one of attempting to keep them financially sound. The attempt to correct these difficulties brought into being the new system. The trial court further found that although it would have been legally possible for the city of Detroit to have granted increased benefits to the plaintiffs herein, the city had intentionally failed to do so and, by appropriate language, had excluded them from the new system.

Plaintiffs appeal, claiming the trial court erred in finding that the amendments to the charter excluded plaintiffs from receiving the increased pension benefits provided by the 1940 amendment. Plaintiffs further claim that if the 1940 charter amendment be construed as denying widows whose husbands lost their lives in line of duty before July 1, 1941, the pension benefits therein allowed the widows whose husbands lost their lives after July 1, 1941, the amendment would be unconstitutional in that it discriminates between similarly situated members of the same class.

The trial court, in reviewing the history with reference to the amendment of the charter and the pro-

ceedings before the common council, noted that 2 propositions had been submitted, one that would include the plaintiffs and one that would not. The one that would not include the plaintiffs was eventually submitted to the people, and adopted. The trial court concluded from this and other facts in the record that the common council was well acquainted with the needs of the plaintiff widows and that the specific provision that they might not enjoy the benefits of the increase under the new system was not inadvertent, but intentional. Since they were under consideration, the failure to mention them taken together with the language of article 4, § 1, and article 9, § 5, of chapter 7, title 9, is strong evidence of an intention to continue benefits to these plaintiff widows only under the old system.

To arrive at a proper understanding of the problem, it is necessary to review several sections of the charter:

## "Title 9

## "Chapter 7

## "Article 2

"Sec. 4. 'Member' shall mean any policeman or fireman included in the membership of the system as provided in article 4, § 1, of this amendment. * * *

"Sec. 11. 'Beneficiary' shall mean any person in receipt of a pension, an annuity, a retirement allowance, or other benefit provided by the system. * * *

## "Article 4

"Sec. 1. The membership of the system shall consist of the following:

"(a) All policemen and firemen as defined in sections 2 and 3 of article 2 of this amendment who are in service on the effective date of this amendment, provided, however, that any policeman or fireman who, on or before the effective date hereof,

shall have been in the employ of the police or fire department for a period of 20 years, or who shall have a total of 20 years of creditable service, shall be excluded from the provisions hereof and shall retain for himself, wife, children, dependent mother and dependent sister all rights and privileges provided by chapters 15 and 21 of title 4 of this charter, unless such policemen or firemen, on or before June 1, 1941, shall file with the city controller his written election to become a member of the system, in which event he shall be a member; such excluded policemen not electing to become members, from and after the effective date of this amendment, while they remain active members of the police department, shall pay 5% of each salary payment into the fund for retired policemen, and such excluded firemen not electing to become members, from and after the effective date of this amendment, while they remain active members of the fire department, shall pay 5% of each salary payment in to the fire department pension and retirement fund, and such salary contributions shall hereafter be used toward the payments of retirement allowances provided for under chapter 15, § 14, subsections (1), (2), and (3) thereof. On retirement, the contributions of such excluded members shall cease.

"(b) All persons who become policemen or firemen on or after the effective date of this amendment and who are confirmed as policemen or firemen according to the rules and regulations of the respective departments shall thereupon become members of the system; subject however, to the following provisions:

"1. Any person who shall become a policeman or fireman at an attained age of 31 years or more may become a member of the system only by vote of the board of trustees who shall fix the rate of contribution of such member on a basis recommended by the actuary for the attained age of such member.

"2. Any appointive official of the police department or fire department appointed from the membership thereof shall be permitted to remain a member

of the system, paying contributions and entitled to benefits as though he had remained in the rank, grade or position held at the date of his appointment.

"3. Any policeman or fireman who, prior to being confirmed, shall be killed or totally incapacitated as the result of the performance of active duty, shall be deemed to have been a member of the system.

"(c) Any member who shall be transferred to a civilian position in his department may retain his rights as a member, subject to all the obligations of a member."

"Article 9

"Sec. 5. No other provision of law, charter or ordinance, which provides wholly or partly at the expense of the city for pensions or retirement benefits for policemen or firemen, their widows, or other dependents, shall apply to members or beneficiaries of the system established by this amendment, their widows, or other dependents.

"(a) All provisions of laws, inconsistent with the provisions of this amendment, are hereby repealed to the extent of such inconsistency.

"(b) This amendment shall not apply to any person who, at the effective date of this amendment shall be receiving a pension or other benefit from the city under the provisions of chapter 15 or 21 of title 4 of this charter, or who is excluded from membership in this system as provided by article 4, section 1(a) of this amendment."

Widows' pensions for policemen who were killed or injured prior to July 1, 1941, are found in title 4, chapter 21, § 19, which reads as follows:

"Sec. 19. Whenever any member shall be killed or die from the effect of injuries received while in the performance of duty, the widow and children, if any, or the children if there is no widow, or the dependent mother if there is no widow or children, or the dependent sister if there is no widow, children,

or dependent mother, of any member who has been killed or has died, since October 1, 1924, from the effect of injuries received while in the performance of duty, shall by vote of the police pension committee herein provided be paid a pension. The widow, dependent mother, or dependent sister, as the case may be, shall receive the sum of $100 per month during the term of her natural life, or until she remarries, in which case all payment of moneys under this charter to such widow, dependent mother, or dependent sister shall cease. If there be a widow and child or children, there shall be paid in addition to pension granted said widow, the sum of $20 per month for each such child under the age of 16 years, which amount shall continue to be paid on account of each such child until it shall reach the age of 16 years, unless such widow shall die or remarry, in which case, or in case such deceased person shall leave no widow, but shall leave 1 or more children, there shall be paid to the person responsible for the care of each such child as shall be under the age of 16 years, the sum of $40 per month. Such payments shall be made monthly, shall continue on account of each such child until it shall have attained the age of 16 years, and shall be made in the manner herein provided. Any pension heretofore authorized shall hereafter be paid in accordance with the provisions of this section."

Widows' pensions for firemen who were killed or injured prior to July 1, 1941, are found in title 4, chapter 15, § 16, which reads as follows:

"Sec. 16. In case any person, a confirmed member of the fire department or an employee, shall be killed while in the discharge of his duties, or shall receive injuries which result in his death, since October 1, 1924, the widow first, or, if there be no widow, then the mother of such person, if dependent upon him for support, or, if there be no widow or dependent mother, then the sister of such person, if dependent upon him for support, shall, by vote of the fire

department pension committee, be paid a pension. The widow, dependent mother, or dependent sister, as the case may be, shall receive the sum of $100 per month during the term of her natural life, or until she remarries, in which case all payment of moneys under this charter to such widow, dependent mother, or dependent sister shall cease. If there be a widow and a child, or children, there shall be paid in addition to the pension granted said widow, the sum of $20 per month for each such child under the age of 16 years, which amount shall continue to be paid on account of each such child, until it shall reach the age of 16 years, unless such widow shall die or remarry, in which case, or in case such deceased person shall leave no widow, but shall leave 1 or more children, there shall be paid to the person responsible for the care of each such child as shall be under the age of 16 years, the sum of $40 per month. Any pension heretofore authorized shall hereafter be paid in accordance with the provisions of this section. Provided, however, that nothing shall be due hereunder except in consideration of a waiver of, and in lieu of any provisions of the 'workmen's compensation act,' so-called; and provided further, that to or on account of any beneficiary hereunder who resides in any foreign country, payments of but 1/2 of the sums herein mentioned shall be made."

Plaintiff widows contend title 9, chapter 7, article 9, § 5, subd (b), is ambiguous and must be read in conjunction with article 4, § 1, which provides that policemen and firemen with 20 years or more of service have a right of election whether to become members of the new system or to remain under the old system. Certain policemen and firemen with long years of service would receive greater benefits under the old system than under the new one. Likewise, this was true of their widows in the event of their election. Therefore, the widows contend that

living firemen and policemen in service on July 1, 1941, had a right to elect to come under the old system and thereby to preserve their rights and benefits to themselves as well as to their widows. Plaintiff widows, however, contend, their husbands having died before July 1, 1941, no right of election could possibly accrue to them and that, therefore, they automatically receive the benefits and increases of the new system since they were made a part of it. Simply stated, they contend the only ones excluded were the widows of policemen and firemen who died after July 1, 1941, and after their husbands had elected to remain under the old system. Despite these contentions, consideration must be given to the language of section 5 of article 9 of the amendment, which provides:

"All provisions of laws inconsistent with the provisions of this amendment, are hereby repealed to the extent of such inconsistency."

The provisions of section 16 of chapter 15 and section 19 of chapter 21, title 4, of the charter under which plaintiff widows are now receiving pensions are on their face inconsistent with the provisions of title 9, chapter 7, article 6, part D, through which widows who became such after the passage of the amendment received increased benefits. All of the funds provided for payment of pensions in chapters 15 and 21 of title 4 (old system) are diverted either into retirement benefits for those members already retired or who were retiring under sections 14 and 23 of chapters 15 and 21 of title 4, or are diverted into the pension reserve fund. This results in widows' pensions becoming the direct obligation of the city under chapter 7, title 9 (new provision of charter), which would appear to be inconsistent with section 16 of chapter 15 and section 19 of chapter 21, title 4 (old system).

Article 4, § 1(a), included all policemen and firemen in service on the effective date of the amendment within membership of the new system, specifically excluding all policemen and firemen having 20 years or more of service, unless such persons had expressly filed a written election to become members of the new system. Any excluded person retained "for himself, wife, children, dependent mother, and dependent sister all rights and privileges provided by chapters 15 and 21 of title 4."

Article 6, part D, of title 9, chapter 7, amended section 16, chapter 15, and section 19, chapter 21, with relation to death benefits for widows and children of members who come under the new system.

No question has been raised that any of plaintiffs' husbands were ever members of this new system, chapter 7, title 9, but plaintiffs seek to have the benefits of the new system apply when their husbands' rights and privileges were to be determined under chapters 15 and 21 of the so-called old plans.

As to those excluded policemen who did not come under the new system, article 4 provided that they were to pay 5% of their salaries into the fund for retired policemen, which is section 23, chapter 21 of title 4, and which has no provision for widows' pensions, but only relates to retirement benefits for policemen. This, it should be noted, is a fund exclusively for policemen.

As to excluded firemen, provision was made that they were to pay 5% of their salaries into the fire department pension and retirement fund, which is section 14, chapter 15 of title 4, to be used exclusively for retirement benefits without relation to widows.

Article 4 attempted to include certain members in the 1940 amendment benefits but, at the same time, it excluded certain members. It allowed them to retain benefits under section 14, chapter 15 and section 23, chapter 21 of title 4, and required them to pay

5% of their salary into a fund for retirement benefits from which widows are excluded.

We think the trial court was correct in holding that the language of the charter amendment clearly showed an intent to exclude the plaintiff widows from the increased benefits provided under the 1940 amendment.

The remaining question is whether such exclusion makes the amendment unconstitutional. All widows of policemen and firemen whose husbands were members of the new policemen and firemen retirement system at date of death or retirement are in one class and subject to the new provisions for benefits. All widows prior to the amendment are in another class. This Court has many times held that legislation is not unconstitutional because it is legislation of a particular kind or character, or because it benefits a particular class, so long as the law operates equally upon those within the particular class. *In re Phillips,* 305 Mich 636; *Lake Shore Coach Lines, Inc.,* v. *Secretary of State,* 327 Mich 146; *People's Appliance, Inc.,* v. *City of Flint,* 358 Mich 34. This amendment includes all within the respective classes; consequently, it is not arbitrary or unreasonable. The legislative body in its wisdom determines who shall receive benefits. In this instance it chose to exclude plaintiffs. This Court cannot and will not question its reasons unless they appear to be palpably arbitrary or unreasonable. *Ver Hoven Woodward Chevrolet, Inc.,* v. *Dunkirk,* 351 Mich 190; *Metropolitan Funeral System Association* v. *Commissioner of Insurance,* 331 Mich 185.

The judgment of the lower court is affirmed. A public question being involved, no costs are allowed.

DETHMERS, C. J., and CARR, KELLY, and EDWARDS, JJ., concurred with KAVANAGH, J.

BLACK, J. (*concurring*). I agree with the construction given by the Court to these municipal charter provisions. But we part company on approach to the Court's redeclared conception of equal protection—that a challenged enactment is good "so long as the law operates equally upon those within the particular class."

That which I continue to oppose (see separate opinion, *Verberg* v. *Simplicity Pattern Co.,* 357 Mich 636, 645, 646) traces lineage back to the loose use of words found on page 339 of the report of *In re Brewster Street Housing Site,* 291 Mich 313. On that occasion Michigan's regularly cited decision of pertinence (*Haynes* v. *Lapeer Circuit Judge,* 201 Mich 138 [LRA1918D, 233]) was assigned as supporting *Brewster's* declaration that legislation is valid as against appeal to the right of equal protection provided it is found that those within "the particular class" are treated equally; whereas *Haynes* (p 14) holds—properly and more accurately—that legislation so challenged satisfies the test when it is made uniform "upon all persons of the class to which it *naturally* applies."

The trouble with *Brewster* and its progeny is not hard to find. Manifestly reading *Haynes* in somewhat of a hurry, the Court—in *Brewster*—eliminated the key word "natural" from *Haynes'* announcement of principle and substituted the word "particular" in the place thereof. Note that *Haynes'* rule was written from the uniformly accepted text of Ruling Case Law, quoted on page 142 of *Haynes'* report (also quoted below).* Note also that American Jurisprudence, the modern successor to Ruling Case Law, carries the identical text and cites *Haynes,* with nu-

---

* " 'The legislature cannot take what might be termed a natural class of persons, split the same in two and then arbitrarily designate the dissevered factions of the original unit as 2 classes, and thereupon enact different rules for the government of each.' 6 RCL, Constitutional Law, § 375, p 383."

merous other authorities, in support (12 Am Jur, Constitutional Law, § 482, pp 156, 157).

*Brewster's* unfortunate phrasing was repeated in *In re Phillips,* 305 Mich 636, 641; *Rohan* v. *Detroit Racing Association,* 314 Mich 326, 350 (166 ALR 1246); *Fitzpatrick* v. *Liquor Control Commission,* 316 Mich 83, 96 (172 ALR 608); and *Lake Shore Coach Lines* v. *Secretary of State,* 327 Mich 146, 153. Now it appears in this case of Burgess. What "particular class" is meant? All I can gather from iterated *Brewster* is that such class is the one claiming invidious discrimination. Is equal protection provided when all members of such "particular class" are treated alike? If so, the way to calculated evasion of this supposedly protected constitutional right is open for all who tend the fires of malignant discrimination.

When an appeal is made to the right of equal protection, the ultimately decisive question is whether the challenged classification is palpably or provably arbitrary. Here the plaintiffs' challenge is ineffective, it appearing that the substantial and nonarbitrary differences between the pre-1941 class of widowhood and the post-1941 class, such differences being manifest on the face of the scrutinized charter provisions, fairly justify favoring of the latter over the former in terms of increased benefits. The 2 classes were not carved out of "a natural class" the members of which, under germane provisions of the charter, are entitled to uniformity of benefits.

I concur in affirmance.

SMITH, J., concurred with BLACK, J.

SOURIS, J., took no part in the decision of this case.