**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 16, 2003**

ANNABELLE R. HARVEY, beneficiary
and successor of Paul Harvey,
deceased, and MICHAEL F. MERRITT,
Judge, retired, substituted for
Bruce A. Fox, Judge, retired,

    Plaintiffs-Appellees,

v                                 No. 121672

STATE OF MICHIGAN, DEPARTMENT OF
MANAGEMENT AND BUDGET, BUREAU OF
RETIREMENT SERVICES, AND JUDGES
RETIREMENT BOARD,

    Defendants-Appellants.
_____

BEFORE THE ENTIRE BENCH

KELLY, J.

    We took this case to consider the constitutionality of

the district court judicial pension provisions of the Judges

Retirement Act, MCL 38.2101 *et seq.*, as amended in the court

reorganization act of 1980*, 1980 PA 438 through 443.[1]  The Court of Appeals reviewed plaintiffs' equal protection challenge and concluded that the statute was unconstitutional, utilizing the intermediate scrutiny test.  We hold that the statute is constitutional and the proper standard is the rational-basis test.  Accordingly, we reverse the decision of the Court of Appeals and enter a judgment in favor of defendants.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs are retired state district court judges who served throughout the state in districts other than the 36th Judicial District in Detroit.  They have asserted that the Judges Retirement Act violates the Equal Protection Clause of the Michigan Constitution[2] by allowing the state to provide a greater retirement allowance to 36th District Court judges than to all others.  The act provides 36th District Court judges a pension based on their former total salary, whereas it provides the others a pension based on only a portion of their former total salary.

Before 1980, in all Michigan's trial level judicial districts, judicial salaries were paid partly by the state and partly by a local funding unit, usually a city or county.  In

___

[1]  Specifically, MCL 38.2104(1)(b) and (d), and MCL 38.2108(3) and (8).

[2]Const 1963, art 1, § 2.

accordance with this dual salary system, all state trial level judges belonged to two retirement systems: one maintained by the state and one by the local funding unit.

In 1980, the Legislature created a new funding scheme for state judicial retirees as part of the court reorganization act, 1980 PA 438 through 1980 PA 443. Through this act, the Legislature sought to require the state to begin to fully assume the cost of state court operations, starting with the 36th Judicial District. Concomitant with this funding, the Legislature amended the Judges Retirement Act to establish the state as the provider of both the state and local components of 36th Judicial District Court judges' salaries. Accordingly, the state pays both the state and local components of 36th Judicial District Court judges' retirement benefits.

In succeeding years, the goal of full state funding of court operations was not fulfilled. Nevertheless, the state continues to fund one hundred percent of 36th Judicial District judges' pensions. The retirement systems and pensions of judges outside the 36th Judicial District continue to be funded by both state and local sources. Depending on the funding and contribution levels in their local government retirement schemes, these judges may receive a greater or lesser retirement benefit than do the judges of the 36th Judicial District.

Plaintiffs commenced the present suit in 1994. The circuit court granted defendants' motion for summary disposition, concluding that the Judges Retirement Act does not violate the Equal Protection Clause when subjected to review under the rational-basis test. The Court of Appeals reversed the decision and remanded, holding that the court should have employed an intermediate scrutiny test in deciding this case. Unpublished opinion per curiam, issued January 3, 1997 (Docket No. 187112)(*Harvey I*).

On remand, the circuit court again found for defendants, holding that the act satisfies intermediate scrutiny. The Court of Appeals again reversed the lower court, applying the intermediate scrutiny test itself and holding the Act unconstitutional. It also remanded the case for further proceedings concerning the appropriate remedy. 251 Mich App 323; 650 NW2d 392 (2002)(*Harvey II*).

Upon defendants' application, this Court granted leave to appeal. In our grant order, we directed the parties to include among the issues to be briefed:

> (1) [T]he applicable level of scrutiny under Fourteenth Amendment analysis, (2) the current viability, if any, of *Manistee Bank v McGowan*, 394 Mich 655 [232 NW2d 636] (1975), and (3) this Court's ability to order the relief requested, inter alia, fully state-funded pensions for outstate judges, prospectively and retroactively, in light of Const 1963, art 1, § 2; art 3, § 2; art 4, § 1; *Lewis v Mich*, 464 Mich 781, 786-787 (2001); see also *North Ottawa Hosp v Kieft*, 457 Mich 394, 408 n 141 (1998); *77th Dist Judge v Michigan*, 175

4

Mich App 681 (1989).  [467 Mich 899 (2002).]

## II. PRINCIPLES OF REVIEW

We review summary disposition judgments and constitutional issues de novo. *Taylor v Gate Pharmaceuticals*, 468 Mich 1, 5; 658 NW2d 127 (2003).  The Equal Protection Clause of the Michigan Constitution declares that "[n]o person shall be denied the equal protection of the laws . . . ." Const 1963, art 1, § 2.  We have interpreted this clause to be coextensive with its federal counterpart.[3] *Crego v Coleman*, 463 Mich 248, 258; 615 NW2d 218 (2000); *Vargo v Sauer*, 457 Mich 49, 60; 576 NW2d 656 (1998); *Doe v Dep't of Social Services*, 439 Mich 650, 662; 487 NW2d 166 (1992).

## III.  ANALYSIS

Not all legislative enactments that group people into classifications affront the Equal Protection Clause.  Indeed, many legitimately group people on the basis of such considerations as (1) their income for purposes of the tax laws, (2) their income for purposes of eligibility for social services, or (3) their conduct for purposes of imposing criminal sanctions.  A court evaluates equal protection

---

[3] By this, we do not mean that we are bound in our understanding of the Michigan Constitution by any particular interpretation of the United States Constitution.  We mean only that we have been persuaded in the past that interpretations of the Equal Protection Clause of the Fourteenth Amendment have accurately conveyed the meaning of Const 1963, art 1, § 2 as well.

challenges to the constitutional validity of a classification using one of three levels of scrutiny, depending on the nature of the classification. *Plyler v Doe*, 457 US 202, 216-217; 102 S Ct 2382; 72 L Ed 2d 786 (1982).

In *Crego*, we articulated the three levels of scrutiny:

> The highest level of review, or "strict scrutiny," is invoked where the law results in classifications based on "suspect" factors such as race, national origin, or ethnicity, none of which are [sic] implicated in this case. *Plyler v Doe*, 457 US 202, 216-217; 102 S Ct 2382; 72 L Ed 2d 786 (1982). Absent the implication of these highly suspect categories, an equal protection challenge requires either rational-basis review or an intermediate, "heightened scrutiny" review.

### A. Where rational basis applies

> Under rational-basis review, courts will uphold legislation as long as that legislation is rationally related to a legitimate government purpose. *Dandridge v Williams*, 397 US 471, 485; 90 S Ct 1153; 25 L Ed 2d 491 (1970). To prevail under this highly deferential standard of review, a challenger must show that the legislation is "arbitrary and wholly unrelated in a rational way to the objective of the statute." *Smith v Employment Security Comm*, 410 Mich 231, 271; 301 NW2d 285 (1981). A classification reviewed on this basis passes constitutional muster if the legislative judgment is supported by any set of facts, either known or which could reasonably be assumed, even if such facts may be debatable. *Shavers v Attorney General*, 402 Mich 554, 613-614; 267 NW2d 72 (1978). Rational-basis review does not test the wisdom, need, or appropriateness of the legislation, or whether the classification is made with "mathematical nicety," or even whether it results in some inequity when put into practice. *O'Donnell v State Farm Mut Automobile Ins Co*, 404 Mich 524, 542; 273 NW2d 829 (1979). Rather, the statute is presumed constitutional, and the party challenging it bears a heavy burden of rebutting that presumption. *Shavers, supra.*

## B. Where heightened scrutiny applies

> The United States Supreme Court has recognized an intermediate level of review, between strict-scrutiny and rational-basis review, under which a challenged statutory classification will be upheld only if it is "substantially related to an important governmental objective." *Clark v Jeter*, 486 US 456, 461; 108 S Ct 1910; 100 L Ed 2d 465 (1988). This "heightened scrutiny" standard has been applied to legislation creating classifications on such bases as illegitimacy and gender. The standard recognizes that, while there may be certain immutable distinctions, for example, between men and women or between legitimate and illegitimate children, that justify differing legislative treatments under some circumstances, the Legislature's authority to invoke those distinctions should not be viewed as an "impenetrable barrier that works to shield otherwise invidious discrimination." *Gomez v Perez*, 409 US 535, 538; 93 S Ct 872; 35 L Ed 2d 56 (1973). See also, e.g., *Clark, supra*; *Mills v Habluetzel*, 456 US 91; 102 S Ct 1549; 71 L Ed 2d 770 (1982); *Mathews v Lucas*, 427 US 495, 505-506; 96 S Ct 2755; 49 L Ed 2d 651 (1976) (all applying heightened scrutiny to classifications based on illegitimacy). Thus, where an equal protection claim alleges unconstitutional treatment on the basis of illegitimacy, the Supreme Court has held that "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally." *Gomez, supra* at 538. However, where a challenged statute is substantially related to an important state interest, the statute should be upheld. *Mills, supra* at 98-99. [*Crego, supra* at 259-261.]

Here, as in *Crego*, plaintiffs' constitutional challenge does not implicate strict scrutiny review.

### IV. THE PROPER LEVEL OF SCRUTINY TO APPLY IN THIS CASE

The key question in this appeal is which of two tests should be applied: intermediate scrutiny or rational-basis scrutiny? In *Harvey I*, the Court of Appeals held that the

7

appropriate test to apply to the Judges Retirement Act is the intermediate scrutiny test. The Court made this decision in reliance on *Manistee Bank, supra*.

## A. The Validity of *Manistee Bank*

In *Manistee Bank*, this Court considered an equal protection challenge to the automobile guest statute,[4] which prohibited suits against automobile drivers by their passengers. Before 1971, there existed two levels of review for equal protection challenges.

The intermediate scrutiny standard emerged from the United States Supreme Court's decision in *Reed v Reed*, 404 US 71; 92 S Ct 251; 30 L Ed 2d 225 (1971). There, the Court evaluated a gender classification by considering whether it was "reasonable, not arbitrary, and [rested] upon some ground of difference having a fair and substantial relation to the object of the legislation . . . ." *Id.* at 76, quoting *FS Royster Guano Co v Virginia*, 253 US 412, 415; 40 S Ct 560; 64 L Ed 989 (1920). The 1975 *Manistee Bank* Court, relying on a law review article,[5] recognized the novelty of the *Reed* formulation, dubbing it the "fair-and-substantial-relation-to-the-object-of-the-legislation test." *Manistee Bank, supra* at

---

[4]MCL 257.401.

[5]Gunther, *Foreward: In search of evolving doctrine on a changing court: A model for a newer equal protection*, 86 Harv L R 1 (1972).

8

670.

After recognizing the new intermediate scrutiny test, the Court held that it applied to statutes like the automobile guest statute, which created "a discrete exception" to the common law that was "no longer experimental," *Manistee Bank, supra* at 671-672:

> In my judgment, at least where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied.

> Judicial deference to the Legislature is premised in part upon the perceived need for experimentation, especially in social and economic matters.

> "[T]he Equal Protection Clause does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all."[47]

> The guest passenger statutes have operated for 45 years to deny a discrete group—guest passengers—recovery for death, injury or loss caused by ordinary negligence. They have been criticized, amended, repealed, whittled away and struck down.

> A court can no longer properly view the guest statutes as but the first experimental step in a legislative scheme designed eventually to require, for example, that gross negligence be shown before any person can recover for injuries suffered in an automobile accident.

> Where a classification scheme creates a discrete exception to a general rule and has been enforced for a sufficiently long period of time that all the rationales likely to be advanced in its support have been developed, a court should fully examine those rationales and determine whether they are sound.

9

[47]*Dandridge v Williams,* [397 US 471,] 486-487[n 24; 25 L Ed 2d 491 (1970)].

Thus, *Manistee Bank* stands for two propositions.  First, the intermediate scrutiny test should be applied to certain equal protection challenges.  Second, the test applies to "discrete exception" situations that occur when a statute creates an exception to a general rule and the exception is no longer considered experimental.

We need not consider the wisdom of the *Manistee Bank* Court's recognition of the intermediate scrutiny test.  Even had the Court not recognized its validity, the test has become established in federal equal protection jurisprudence,[6] and our state Equal Protection Clause is coextensive with federal equal protection.[7]  Rather, we must determine whether the intermediate scrutiny test applies in the "discrete exception" situation identified in *Manistee Bank*.

We conclude that it does not and that the second holding in *Manistee Bank* is flawed.  First, the "discrete exception" justification for the application of intermediate scrutiny review has not found support in federal equal protection jurisprudence.  The *Manistee Bank* Court decision determined that the age of certain legislative enactments permits the

[6]E.g., *Plyler, supra* at 217.

[7]*Crego, supra.*

court to inquire more deeply into the rationales behind them.

However, the United States Supreme Court has applied the intermediate scrutiny test only to challenges involving quasi-suspect classes, such as gender[8] and illegitimacy.[9] The federal Equal Protection Clause has never been expanded to permit a close scrutiny of legislative wisdom beyond those cases involving suspect or quasi-suspect classes. Certainly, the United States Supreme Court has not applied intermediate scrutiny review in any case involving a "discrete exception" to a general rule no longer considered experimental.

Moreover, after *Manistee Bank* was decided, this Court adhered to the federal courts' limited view of when intermediate scrutiny review should apply. In *Frame v Nehls*,[10] we stated that determining the appropriate test applicable to equal protection challenges is largely a choice between strict scrutiny and rational basis.[11] "Unless the discrimination impinges on the exercise of a fundamental right or involves a suspect class, the inquiry . . . is whether the classification

---

[8]See *Craig v Boren*, 429 US 190; 97 S Ct 451; 50 L Ed 2d 397 (1976).

[9]See *Clark v Jeter*, *supra*.

[10]452 Mich 171, 183; 550 NW2d 739 (1996).

[11]The *Frame* Court implicitly acknowledged that intermediate scrutiny would apply if the classification in that case were based on illegitimacy. *Frame, supra* at 182 n 11, 187 n 16.

11

is rationally related to a legitimate governmental purpose."
*Id.* at 183.

Similarly, in *Yaldo v North Pointe Ins Co*,[12] we stated: "Defendant is not a member of a protected class, nor are fundamental rights involved. Therefore, defendant's equal protection claim is reviewed using a rational basis test." As a final example, in *Vargo*,[13] we stated: "Because, there is no fundamental right or suspect classification involved, the rational-basis standard of review governs in the present case." These cases demonstrate our adherence to the federal trend that limits the application of intermediate scrutiny to cases involving suspect classifications that do not require strict scrutiny.

Likewise, this Court recently failed to apply the *Manistee Bank* analysis to an equal protection challenge involving a discrete exception to a general rule. In *Crego,* we evaluated a repealed section of MCL 722.713. It permitted the mother of an illegitimate child to enter into a nonmodifiable child support agreement with the putative father in lieu of the court determining paternity and setting a support amount. This statute represented a forty-year-old exception to the general rule allowing for the modification of

---

[12]457 Mich 341, 349; 578 NW2d 274 (1998).

[13]*Vargo, supra* at 60.

child support agreements.

Although *Crego* involved a discrete exception no longer considered experimental, we held that intermediate scrutiny would apply only if the classification were considered to be based on illegitimacy. Because the classification in the statute was based on the ascertainment of paternity, rational basis scrutiny was applied. Significantly, the Court gave no consideration to the idea that, because the challenged statute excepts from a general rule, intermediate scrutiny should apply.

Thus, the present state of both federal and Michigan equal protection jurisprudence fails to support application of the intermediate scrutiny test to statutes that create "a discrete exception to a general rule" where the exception "is no longer considered experimental." Accordingly, we overrule the *Manistee Bank* holding to the extent that it created the "discrete exception to a general rule" basis for applying intermediate scrutiny. We affirm its recognition of the existence of the intermediate scrutiny test.

B.    The Propriety of Rational Basis Review

Given the state of the law and because this case does not involve a quasi-suspect classification, we hold that the Court of Appeals erred in ordering application of the intermediate

13

scrutiny test.[14]  The circuit court correctly held that plaintiffs' claim must be judged using the rational-basis test.

In holding that rational-basis review applies, we find strong support in *Hughes v Judges' Retirement Bd*,[15] decided just four years after *Manistee Bank*.  There, the Court considered a similar equal protection claim concerning a statute that amended the Judges Retirement Act to increase the pension benefits to judges who retired after its effective date.  The amendment caused the pensions of judges who remained in the system or were new to it to be greater than the pensions of those who had already retired.

In assessing the equal protection challenge brought by the already-retired judges, the Court unanimously chose to consider the judges a classification that should be analyzed under the rational-basis test.  It stated:

> "This Court has many times held that legislation is not unconstitutional because it is legislation of a particular kind or character, or because it benefits a particular class, so long as the law operates equally upon those within the particular class.  *In re Phillips*, 305 Mich 636 [9 NW2d 872 (1945)]; *Lake Shore Coach Lines, Inc v Secretary of State*, 327 Mich 146 [41 NW2d 503 (1950)]; *People's Appliance, Inc v City of Flint*,

---

[14]In *Harvey II*, the Court of Appeals compounded its error by adopting the dicta analysis of *77th Dist Judge v Michigan*, 175 Mich App 681; 438 NW2d 333 (1989), which opined that the Judges Retirement Act fails the intermediate scrutiny test.

[15]407 Mich 75; 282 NW2d 160 (1979).

14

358 Mich 34 [99 NW2d 522 (1959)]. . . . This Court cannot and will not question [the Legislature's] reasons unless they appear to be palpably arbitrary or unreasonable. *Ver Hoven Woodward Chevrolet, Inc v Dunkirk*, 351 Mich 190 [88 NW2d 408 (1958)]; *Metropolitan Funeral System Ass'n v Commissioner of Insurance*, 331 Mich 185 [49 NW2d 131 (1951)]." [*Hughes*, *supra* at 93, quoting *Burgess v Detroit*, 359 Mich 269; 280; 120 NW2d 483 (1960).]

The Court then described why the Legislature's actions were rational, saying that it was sufficient to meet this test that the Legislature was inducing "competent and qualified attorneys to become judges, or to remain judges if already in office." *Hughes, supra* at 94. Thus, the rational-basis test had been satisfied and the statute was constitutional.

In our case, a similar analysis is appropriate. The state, by assuming the entire funding of the pensions of 36th District judges in the financially distressed city of Detroit, made those pensions more secure. Certainly the Legislature would or could understand that this would induce competent and qualified attorneys to become judges or to remain judges, just as the legislation did in *Hughes*.[16] Accordingly, we agree with the trial court's holding that plaintiffs have not satisfied their burden to show that there was no rational basis for this legislation. Thus, the statute withstands constitutional scrutiny.

---

[16] We note that it is likely that the Legislature was motivated by other rational grounds as well. However, we need not consider these as the case can be resolved, as was *Hughes*, on this ground alone.

15

## V. Conclusion

For the reasons set forth in this opinion, we hold that the Judges Retirement Act is constitutional. The Court of Appeals erred in evaluating plaintiffs' equal protection challenge using the intermediate scrutiny test and in holding the act unconstitutional. When the correct test, rational-basis scrutiny, is applied, plaintiffs are unable to show that no rational basis exists for the act's disparate treatment of 36th Judicial District judges. Moreover, we find that a rational basis did exist. Accordingly, because the contested portions of the Judges Retirement Act survive rational-basis scrutiny, we hold them constitutional and reverse the decision of the Court of Appeals. The original judgment of the Ingham Circuit Court is reinstated.

Marilyn Kelly
Maura D. Corrigan
Michael F. Cavanagh
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

16

**STATE OF MICHIGAN**

**SUPREME COURT**

ANNABELLE R. HARVEY, beneficiary
and successor of Paul Harvey,
deceased, and MICHAEL F. MERRITT,
Judge, retired, substituted for
Bruce A. Fox, Judge, retired,

    Plaintiffs-Appellees,

v                                            No. 121672

STATE OF MICHIGAN, DEPARTMENT OF
MANAGEMENT AND BUDGET, BUREAU OF
RETIREMENT SERVICES, AND JUDGES
RETIREMENT BOARD,

    Defendants-Appellants.

_____

WEAVER, J. *(dissenting).*

    I respectfully dissent. Applying the analysis of *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975), which the majority overrules, I would affirm the Court of Appeals decision that the statutory scheme concerning pension benefits of the judges of the 36th Judicial District is unconstitutional because it violates equal protection. Moreover, even under the rational-basis test, I would conclude that the funding scheme is unconstitutional.

    Because the statute at issue in *Manistee Bank* involved a discrete exception to the general rule and the statutory

exception was no longer experimental, the Court employed a "fair-and-substantial-relation-to-the-object-of-the-legislation" test.  *Id.* at 670-671.  The Court further explained:

> Where a classification scheme creates a discrete exception to a general rule and has been enforced for a sufficiently long period of time that all the rationales likely to be advanced in its support have been developed, a court should fully examine those rationales and determine whether they are sound. [*Id.* at 672.]

Likewise, the statutory scheme at issue in the present case involves a discrete exception to the general rule: pension benefits for 36th District judges are funded differently than the pension benefits for the rest of the district judges in the state.  Applying the test articulated in *Manistee Bank* to a similar, older version of the current statutory scheme, a Court of Appeals panel in a previous case struck down the scheme, explaining:

> We hold that the statutory disparity in treatment as to the compensation, retirement funding obligations, and retirement benefits violates equal protection.  We are unable to discern any constitutionally appropriate basis for the disparities that would permit us to find a reasonable relationship to the object of the legislation or that would avoid the conclusion that the 36th District judges' preferred compensation treatment is arbitrary and unreasonable.  Even though 36th District judges do serve in the most populous area of this state, defendant has not shown that the judges' duties are thereby expanded; statistical data submitted in this case suggests that their individual case load is less than plaintiff's own case load.  Although defendant

2

suggests that the particular compensation package afforded 36th District judges is attributable to the transitions from those judicial positions superseded by the creation of the 36th District Court, it remains to be explained the significance these historical facts have at this present time or why they serve to justify more favorable compensation and benefits. In short, no reason has been put forth explaining why the duties, responsibilities, and circumstances of service obtaining in the 36th District Court provide the basis for any reasonable justification of more favorable treatment than their counterparts in the other judicial districts of this state. Accordingly, we find ourselves in agreement with the ruling of the Court of Claims that the statutory disparities are unconstitutional. [*77th Dist Judge v Michigan,* 175 Mich App 681, 691-692; 438 NW2d 333 (1989).]

This analysis is equally applicable to the present case. The statutory scheme guarantees 36th District judge retirees a level of retirement benefits that is not guaranteed to other district judges. Therefore, applying *Manistee Bank,* I would conclude that the statutory scheme at issue is unconstitutional because it violates equal protection.

Moreover, even if this case were analyzed under the rational-basis test, I would still conclude that the statutory scheme at issue is unconstitutional. As we explained in *Reich v State Hwy Dep't*, 386 Mich 617, 623; 194 NW2d 700 (1972), when considering an equal-protection challenge to a statute, the classification at issue must bear a *reasonable relationship* to the *recognized purpose* of the act. It may not be arbitrary or unreasonable. *Id.* (emphasis added). While

3

deferential, the rational-basis test should not be applied so deferentially as to lack any substance.  This Court is not simply a rubber stamp for anything the Legislature enacts.

The original goal of the funding scheme was to require the state to begin to fully assume the cost of state-court operations.  However, since the Legislature created the funding scheme in 1980, it has taken no further steps to fully fund pension benefits for any other district courts.  Thus, if there was a rational basis when the statutory scheme was enacted, it does not continue now, twenty-three years later, when the Legislature has taken no further steps toward its goal to fully assume the cost of state-court operations.[1] Therefore, even under the rational-basis test, the Court should conclude that the statutory scheme is unconstitutional because it violates equal protection.

Elizabeth A. Weaver

---

[1] The majority's argument that the rational-basis test is satisfied because the funding scheme would attract competent and qualified attorneys to become judges is not persuasive. First, as noted, the goal of the legislation was to require the state to begin fully funding state-court operations. Second, there is no lack of candidates for judicial office in districts where pension benefits are not fully funded.  Thus, inducing competent and qualified attorneys to become judges should not be considered a rational basis for the statutory scheme.

4