# STATE OF MICHIGAN

# COURT OF APPEALS

THEATER GROUP 3, LLC, and THEATER
GROUP IV, INC.,

Plaintiffs-Appellees,

v

SECURA INSURANCE COMPANY,

Defendant-Appellant.

UNPUBLISHED
November 13, 2014

No. 317393
Wayne Circuit Court
LC No. 10-014862-CK

Before: FITZGERALD, P.J., and WILDER and OWENS, JJ.

PER CURIAM.

Defendant, Secura Insurance Company, appeals as of right the trial court's order denying defendant's motion to vacate the arbitration award and entering judgment in favor of plaintiffs, Theater Group 3 and Theater Group IV. We affirm.

Plaintiffs filed a complaint against defendant alleging breach of contract for failing to pay plaintiffs pursuant to an insurance policy for damages sustained in a wind storm on July 23, 2010 ("storm claim"), and for water damage caused to theater 8 by a broken icemaker ("theater 8 claim"). Following discovery and various motions for summary disposition, the trial court ordered the parties to submit the matter to binding arbitration. The arbitrator determined that the water damage caused to theater 8 was a covered loss under the policy, and entered judgment for plaintiffs. However, it denied plaintiffs damages for the storm claim. On appeal, defendant only challenges the trial court's decision and the arbitrator's decision regarding the theater 8 claim.

Defendant first argues that the trial court erred by denying its motion for summary disposition pursuant to MCR 2.116(C)(10), because there was no genuine issue of fact that the water in theater 8 seeped in from underground, and thus, the resulting damage was excluded under the policy. We disagree. We review de novo a motion for summary disposition pursuant to MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A reviewing court considers the documentary evidence in a light most favorable to the nonmoving party. *Id.* at 120. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.* A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Additionally, the interpretation of an insurance contract and

-1-

whether an ambiguity exists are questions of law that we review de novo. *Wilkie v Auto-Owners Ins Co*, 469 Mich 1, 47; 664 NW2d 776 (2003).

An insurance contract should be read as a whole and its language given its ordinary and plain meaning. *Wilkie*, 469 Mich at 48, 50 n 11. Contracts are "construed so as to give effect to every word or phrase as far as practicable." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003) (quotation marks and citations omitted). The insurance policy in question stated that defendant would pay for any loss caused by a "covered cause of loss," which was defined as "risks of direct physical loss" unless the loss was excluded or limited by the sections that followed. The water exclusion that followed provided that defendant "will not pay for loss or damage caused directly or indirectly" by:

> **4.** Water under the ground surface pressing on, or flowing or seeping through:
>
> > **a.** Foundations, walls, floors or paved surfaces;
> >
> > **b.** Basements, whether paved or not; or
> >
> > **c.** Doors, windows or other openings.

The policy states that this exclusion applies regardless of whether any of the above is caused by an act of nature or is otherwise caused. Giving this sentence its plain and ordinary meaning, it is clear that "water under the ground surface" encompasses naturally occurring water, as well as water originating from an artificial source. See *Buttelworth v Westfield Ins Co*, 41 Ohio App 3d 288, 288-289; 535 NE2d 320 (1987) (examining a similar clause and finding that "[t]he exclusion clearly and unambiguously indicates that damage from any water below the surface which seeps through a foundation is not covered by the policy, regardless of whether the source is natural or artificial," such as a ruptured plumbing system). Thus, even if the water originated from the building's plumbing system, if the water was "under the ground surface" when it entered through the foundation or walls, the resulting damage would not be a covered loss under the plain language of the policy.

However, at the time defendant moved for summary disposition, there was a genuine issue of material fact whether the water entered the building from "under the ground surface." It is clear the water originated from a broken drain line from the icemaker in the storage room adjacent to theater 8. There was testimony that the workers had to "dig down" under the concrete where the pipe ran to make the repair and that is where water was observed flowing. This evidence alone, however, is insufficient to prove that the pipe or the leak was actually "under the ground surface." Simply because it was under the concrete does not mean it was also "under the ground surface." See, e.g., *Hudson v Allstate Ins Co*, 809 NYS2d 124; 25 AD3d 654 (2006) (examining a similar clause and finding that the pipe in question "was not below the surface of the ground" where it entered the "house through the foundation wall and ran through artificially created gravel material that filled the area above the ground"). There was no evidence regarding where the water had entered the theater, other than defendant's assertion that it came from the subterranean water table. It was clear that the floor of theater 8 was covered in water, but other than the parties' assertions, there was no indication where exactly it had flowed from, particularly whether the water was "under the ground surface pressing on, or flowing or seeping

-2-

through foundations, walls, floors or paved surfaces." Therefore, the trial court did not err by denying defendant summary disposition.

Defendant next argues that the trial court erred when it refused to partially vacate the arbitrator's opinion and award because the arbitrator exceed her authority. We disagree. "Generally, issues regarding an order to enforce, vacate, or modify an arbitration award are reviewed de novo," as is whether an arbitrator exceeded his or her authority. *Washington v Washington*, 283 Mich App 667, 672; 770 NW2d 908 (2009); *Saveski v Tiseo Architects, Inc*, 261 Mich App 553, 554; 682 NW2d 542 (2004).

A court's review of an arbitration award is very limited. *Police Officers Ass'n of Mich v Manistee Co*, 250 Mich App 339, 343; 645 NW2d 713 (2002). "A court may not review an arbitrator's factual findings or decision on the merits." *City of Ann Arbor v AFSCME*, 284 Mich App 126, 144; 771 NW2d 843 (2009). "Likewise, a reviewing court cannot engage in contract interpretation, which is an issue for the arbitrator to determine." *Id.* Pursuant to MCR 3.602(J)(2), a reviewing court must vacate an arbitration award if:

(a) the award was procured by corruption, fraud, or other undue means;

(b) there was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights;

(c) the arbitrator exceeded his or her powers; or

(d) the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.

"The fact that the relief could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." MCR 3.602(J)(2). A court may not substitute its judgment for that of the arbitrator. *City of Ann Arbor*, 284 Mich App at 144.

Defendant argues that the award should have been partially vacated pursuant to MCR 3.602(J)(2)(c). Arbitrators "exceed their power whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *DAIIE v Gavin*, 416 Mich 407, 434; 331 NW2d 418 (1982). However, errors of law are only reviewable if the arbitrator acted with "manifest disregard of the law," i.e., it is clear on the face of the award that the arbitrator was presented with controlling precedents which he or she refused to apply. *Id.* at 441-442.

"[W]here it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside." [*Id.* at 443, quoting *Howe v Patrons' Mutual Fire Ins Co of Mich*, 216 Mich 560, 570; 185 NW 864 (1921).]

Finally, it important for reviewing courts to keep in mind the following:

-3-

Arbitration, by its very nature, restricts meaningful legal review in the traditional sense. As a general observation, courts will be reluctant to modify or vacate an award because of the difficulty or impossibility, without speculation, of determining what caused an arbitrator to rule as he did. The informal and sometimes unorthodox procedures of the arbitration hearings, combined with the absence of a verbatim record and formal findings of fact and conclusions of law, make it virtually impossible to discern the mental path leading to an award. Reviewing courts are usually left without a plainly recognizable basis for finding substantial legal error. It is only the kind of legal error that is evident without scrutiny of intermediate mental indicia which remains reviewable, such as that involved in these cases. In many cases the arbitrator's alleged error will be as equally attributable to alleged "unwarranted" factfinding as to asserted "error of law". In such cases the award should be upheld since the alleged error of law cannot be shown with the requisite certainty to have been the essential basis for the challenged award and the arbitrator's findings of fact are unreviewable. [*Gavin*, 416 Mich at 429.]

In this case, defendant has failed to show how the arbitrator exceeded her authority. Defendant does not challenge the arbitrator's contractual authority, but rather argues that the arbitrator committed an error of law in interpreting the contract. However, the record does not show that the arbitrator acted with "manifest disregard of the law," i.e., it is clear on the face of the award that the arbitrator was presented with controlling precedents which she refused to apply. Defendant's argument challenges the factual findings and contractual interpretation of the arbitrator, rather than the legal principles she applied. "A court may not review an arbitrator's factual findings or decision on the merits" or "engage in contract interpretation." *City of Ann Arbor*, 284 Mich App at 144.

Although the arbitrator incorrectly interpreted the definition section of the policy as extending coverage to water damage caused by a break in the plumbing system, this erroneous interpretation is not enough for this Court to vacate the arbitrator's award, particularly where we are not to engage in contractual interpretation. Further, to determine whether that interpretation played an integral role in the arbitrator's decision would require this Court to speculate, and because it is difficult to determine what caused the arbitrator to rule as she did, the award should be upheld. *Gavin*, 416 Mich at 429.[1]

---

[1] It is clear from the written opinion that the arbitrator determined that the leaking PVC pipe caused the water damage and not groundwater. Thus, it could be assumed, as the trial court determined, that the arbitrator considered the water exclusion and determined that it did not apply. Meaning, the arbitrator determined that the water did not enter the theater from "under the ground surface." On the other hand, as defendant argues, the arbitrator could have misinterpreted the water exclusion as to only apply to water from natural sources, i.e. groundwater, and not water from artificial sources, such as the plumbing system.

Finally, defendant argues that the trial court erred by declaring that the insurance policy applied to all improvements and betterments, and not just those made by the tenants. We disagree. We review de novo a trial court declaratory ruling. *Janer v Barnes*, 288 Mich App 735, 737; 795 NW2d 183 (2010).

As an initial matter, to the extent defendant argues on appeal that the trial court should not have struck its affirmative defenses 7, 9, and 10, this issue is waived for appellate review because defendant specifically agreed to their dismissal on the record. See *People v Carter*, 462 Mich 206, 215-217; 612 NW2d 144 (2000) (noting that expressly acquiescing to the trial court's decision constitutes a waiver). The trial court's decision to strike affirmative defense 8 relates to the interpretation of the contract and whether it extended to all improvements and betterments, and thus, is reviewable.

Additionally, defendant argues that the trial court erred by relying on plaintiffs' lease as parol evidence. However, according to the record, the trial court did not appear to rely on the lease at all. While the lease issue was raised at oral argument, it was not a focus of plaintiffs' argument, who were the ones to move for the declaratory judgment. Rather, their focus was on the fact that the word "tenants' " was not placed before "improvements and betterments" and that is the argument the trial court appeared to adopt.

Defendant primarily argues that the insurance policy only covered the tenants' improvements and betterments. However, defendant's reading of the policy requires this Court to read into the contract words not contained therein, which we are not permitted to do. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 720 n 7; 706 NW2d 426 (2005), quoting *Cottrill v Mich Hosp Serv*, 359 Mich 472, 476; 102 NW2d 179 (1960). Rather, the contract must be reviewed as written, and may not be reformed or modified. *Id.* The declaration page states that plaintiffs had building coverage of $500,000. While after the address it does state, "BUILDING IS IMPROVEMENTS AND BETTERMENTS," nowhere under coverage does it provide any limitations, such as "tenants' " improvements and betterments. The policy goes on to state "Covered Property . . . means the type of property described in this section . . . if a Limit of Insurance is shown in the Declarations for that type of property. As stated, a limit of insurance of $500,000 is shown on the declarations for "building." If the policy intended to only cover the tenants' improvements and betterments, it should have provided for such. Accordingly, the trial court did not err by declaring that the policy covered all improvements and betterments.

Affirmed.


/s/ E. Thomas Fitzgerald
/s/ Donald S. Owens

-5-