**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Maura D. Corrigan

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 21, 2004**

LISA ROBERTS,

    Plaintiff-Appellee,

v                                        No. 122312

MICHAEL ATKINS, M.D.,

    Defendant-Appellant,

and

MECOSTA COUNTY GENERAL HOSPITAL,
GAIL A. DESNOYERS, M.D., BARB
DAVIS, and OBSTETRICS AND
GYNECOLOGY OF BIG RAPIDS, P.C.,
formerly known as GUNTHER, DESNYOYERS
& MEKARU,

    Defendants.
_____

LISA ROBERTS,

    Plaintiff-Appellee,

v                                        No. 122335

GAIL A. DESNOYERS, M.D., BARB
DAVIS, OBSTETRICS AND GYNECOLOGY
OF BIG RAPIDS, P.C., formerly
known as GUNTHER, DESNOYERS &
MEKARU,

    Defendants-Appellants,

and

MICHAEL ATKINS, M.D., and
MECOSTA COUNTY HOSPITAL,

    Defendants.

_____

LISA ROBERTS,

    Plaintiff-Appellee,

v                                      No. 122338

MECOSTA COUNTY GENERAL HOSPITAL,

    Defendant-Appellant,

and

GAIL A. DESNOYERS, M.D., MICHAEL
ATKINS, M.D., BARB DAVIS, and
OBSTETRICS AND GYNECLOGOY OF
BIG RAPIDS, P.C., formerly known
as GUNTHER, DESNOYERS & MEKARU,

    Defendants.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

## INTRODUCTION

This medical malpractice case is before us for the second time. In *Roberts v Mecosta*, 466 Mich 57; 642 NW2d 663 (2002) (*Roberts I*), we held that the statute of limitations could not be tolled under MCL 600.5856(d) unless notice was given in compliance with all the provisions of MCL 600.2912b, and that § 2912b imposed no

2

requirement on defendants to object to the sufficiency of plaintiff's notices of intent before the filing of the complaint. Because the Court of Appeals had not addressed the trial court's conclusion that plaintiff's notices of intent did not comply with § 2912b, we remanded the matter to that Court for further proceedings. On remand, the Court of Appeals held that plaintiff's notices of intent strictly complied with the provisions of § 2912b.

We conclude that plaintiff's notices of intent are deficient in several respects and that, therefore, the statute of limitations was not tolled under § 5856(d). The unambiguous language of MCL 600.2912b(4) requires a medical malpractice plaintiff to include in her notice of intent a statement of (1) the factual basis for the claim, (2) the applicable standard of practice or care alleged by the claimant, (3) the manner in which it is claimed that the applicable standard of practice or care was breached, (4) the alleged action that should have been taken to comply with the alleged standard, (5) the manner in which it is claimed that the breach was the proximate cause of the injury claimed in the notice, and (6) the names of all professionals and facilities the claimant is notifying. Although the notices of intent in this case are not wholly deficient with regard to the above requirements, they are

3

nonetheless not in full compliance with § 2912b because they fail to properly set forth allegations regarding the standard of practice or care applicable to each named defendant, allegations regarding the manner in which it was claimed that defendants breached the applicable standards of practice or care, the alleged actions that defendants should have taken in order to satisfy the alleged standards, or allegations of the manner in which defendants' breaches of the standards constituted the proximate cause of plaintiff's injury.

Because plaintiff did not fully comply with the unambiguous requirements of § 2912b(4), we reverse the decision of the Court of Appeals and we reinstate the judgments of the trial court granting defendants' motions for summary disposition.

## I. FACTS AND PROCEDURAL HISTORY

We set forth the following recitation of facts in our prior opinion:

> Plaintiff was pregnant and sought treatment because she was experiencing severe pain in her abdomen. She was diagnosed as having suffered a spontaneous abortion and a D & C [dilation and curettage] was performed. Plaintiff alleges that it was later discovered that she had actually been suffering from an ectopic pregnancy, not a spontaneous abortion, and that her left fallopian tube had burst. Emergency surgery was performed to remove plaintiff's left fallopian tube.

4

Plaintiff claims that as a result of the second operation, she can no longer bear children because her right fallopian tube had previously been removed.

Plaintiff decided to pursue a medical malpractice claim, alleging that defendants misdiagnosed her condition and subsequently performed an unnecessary operation.

Plaintiff served a notice of intent on defendant Mecosta County General Hospital on September 19, 1996, and on the remaining defendants on September 23, 1996. Serving these notices constituted plaintiff's attempt to (1) meet the notice requirements for medical malpractice actions prescribed by MCL 600.2912b and (2) toll the statute of limitations pursuant to MCL 600.5856(d).

After the waiting period required under MCL 600.2912b had passed, plaintiff filed her complaint. Thereafter, defendants filed motions for summary disposition. Defendants argued, inter alia, that plaintiff's claims were barred by the statute of limitations because the notices of intent failed to comply with the requirements outlined in MCL 600.2912b(4). Specifically, defendants asserted that plaintiff's notices failed to sufficiently state the standard of care, the manner in which the standard was breached, the action the defendants should have taken, and the proximate cause of the injury. Defendants advanced the position that, since the notices were insufficient, the period of limitation was not tolled under MCL 600.5856(d) and had therefore expired. The trial court granted the motions for summary disposition.

The Court of Appeals reversed and remanded, holding that defendants had waived their ability to challenge plaintiff's failure to comply with the notice requirements because they did not raise their objections before the time the complaint was filed . . . . [*Roberts I, supra* at 59-61.]

5

This Court reversed the decision of the Court of Appeals, holding that (1) the statute of limitations was not tolled unless notice was given in compliance with all the provisions of § 2912b, (2) that § 2912b imposed no duty on defendants to challenge any deficiencies in the notices of intent before the complaint was filed, and (3) that defendants were not required to assert the statute of limitations defense or to challenge the sufficiency of the notices of intent until after plaintiff filed suit. *Roberts I, supra*. We "express[ed] no opinion concerning plaintiff's compliance or noncompliance with MCL 600.2912b, an issue that the Court of Appeals declined to answer." *Id*. at 71 n 8. We remanded the matter to the Court of Appeals to address this issue. *Id*. at 71.

On remand, the Court of Appeals held that plaintiff's notices of intent strictly complied with the requirements of § 2912b.[1]  252 Mich App 664, 666; 653 NW2d 441 (2002). The panel opined that plaintiff's notices of intent set forth a proper factual basis for her claim and a sufficient, even if not *accurate*, allegation as to the applicable standard of practice or care.  *Id*. at 667-670.

---

[1] The panel declined to address plaintiff's alternative argument that her notices substantially complied with § 2912b(4) and that substantial compliance was sufficient.

6

The panel further concluded that, by reference to the recitations of the factual basis for the claim, the notices of intent set forth the manner in which it was claimed that the applicable standards of care were breached, the alleged actions that should have been taken, and the manner in which it was alleged that the breaches of the standards of care were the proximate cause of plaintiff's injury. The panel likewise concluded that the notices properly set forth the names of all health professionals and facilities that plaintiff notified in relation to the claim.

## II. STANDARD OF REVIEW

This case involves questions of statutory interpretation, which are reviewed de novo. *Roberts I, supra* at 62. We review the trial court's grant of summary disposition de novo. *Id.*

## III. ANALYSIS

### A. RELEVANT STATUTES

MCL 600.2912b(1)[2] precludes a medical malpractice claimant from commencing suit against a health professional

---

[2] MCL 600.2912b(1) provides:

> Except as otherwise provided in this section, a person *shall not commence* an action alleging medical malpractice against a health
> (continued…)

7

or health facility unless written notice is provided to that professional or facility before the action is commenced. After providing the written notice, the claimant is required to wait for the applicable notice period to pass before filing suit.[3]

The two-year period of limitation for medical malpractice actions is tolled during the notice period "after the date notice is given *in compliance* with section 2912b." MCL 600.5856(d) (emphasis supplied). Thus, in order to toll the limitation period under § 5856(d), the claimant is required to comply with all the requirements of § 2912b. *Roberts I, supra* at 64.

---

(continued…)
> professional or health facility unless the person has given the health professional or health facility written notice under this section not less than 182 days before the action is commenced. [Emphasis supplied.]

[3] The claimant generally may not commence an action for 182 days after providing the notice of intent. Exceptions to this general rule are set forth in MCL 600.2912b(3) (providing that under certain circumstances the 182-day notice period is shortened to 91 days), MCL 600.2912b(8) (providing that the claimant may file an action after 154 days if no response to the notice is received as contemplated by MCL 600.2912b[7]), and MCL 600.2912b(9) (permitting the claimant to file the action immediately if, at any time during the applicable notice period, the professional or facility named in the notice informs the claimant in writing that the professional or facility does not intend to settle the claim within the applicable notice period).

MCL 600.2912b(4) enumerates the specific topics that the claimant is required to address in the written notice of intent:

> The notice given to a health professional or health facility under this section *shall contain a statement of at least all of the following*:
>
> (a) The factual basis for the claim.
>
> (b) The applicable standard of practice or care alleged by the claimant.
>
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
>
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
>
> (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
>
> (f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim. [Emphasis supplied.]

It is against this unambiguous statutory backdrop that we must determine the adequacy of plaintiff's notices of intent.

B.  PLAINTIFF'S NOTICES OF INTENT DO NOT COMPLY WITH § 2912b(4)

Plaintiff provided the following notice of intent to defendant Mecosta County General Hospital:

9

1. FACTUAL BASIS FOR CLAIM

This is a claim for negligence which occurred on October 4, 1994, at Mecosta County General Hospital. It is claimed that on said date while pregnant with her first child, Claimant presented herself to Mecosta County General Hospital complaining of severe pain. At that time a diagnosis of a spontaneous abortion was made and a D and C was performed. Claimant was sent home at that time.

Over the course of the next few days Claimant continued to experience pain and cramping and, on October 7, 1994, was again seen at Mecosta County General Hospital. Claimant was told that the pain she was experiencing was cramps from the D and C she had done and was sent home.

Claimant returned to the hospital on October 8, 1994, wherein it was discovered that Claimant had not had a spontaneous abortion but had an ectopic pregnancy in her left tube which had burst. Emergency surgery was performed at that time and her left tube was removed.

Claimant had her right tube removed approximately ten years ago and, as a result of the negligence set forth above, she is now unable to have children.

2. THE APPLICABLE STANDARD OF PRACTICE OR CARE ALLEGED

Claimant contends that the applicable standard of care required that Mecosta County General Hospital provide the claimant with the services of competent, qualified and licensed staff of physicians, residents, interns, nurses and other employees to properly care for her, render competent advice and assistance in the care and treatment of her case and to render same in accordance with the applicable standard of care.

**3.    THE MANNER IN WHICH IT IS CONTENDED THAT THE APPLICABLE STANDARD OF CARE WAS BREACHED**

See paragraph 2 above.[4]

**4.    THE ACTION THAT SHOULD HAVE BEEN TAKEN TO ACHIEVE COMPLIANCE WITH THE STANDARD OF PRACTICE OR CARE**

See paragraph 2 above.

**5.    THE MANNER IN WHICH THE BREACH WAS THE PROXIMATE CAUSE OF CLAIMED INJURY**

See paragraph 2 above.

**6.    NAMES OF HEALTH PROFESSIONALS, ENTITIES, AND FACILITIES NOTIFIED**

Mecosta County General Hospital and all agents and employees, actual or ostensible, thereof.

Plaintiff subsequently provided the following notice of intent to the remaining defendants (Obstetrics & Gynecology of Big Rapids, P.C.; Gail DesNoyers, an obstetrician, and Barb Davis, P.A.C., a physician's assistant, both of whom were affiliated with the professional corporation; and Michael Atkins, M.D., a physician who treated plaintiff at the hospital's emergency room):

---

[4] Plaintiff contends that the references to "paragraph 2" in the notice are typographical errors, and that they should be viewed as referring to paragraph 1.

1.   FACTUAL BASIS FOR CLAIM

This is a claim for negligence which occurred on October 4, 1994, at Obstetrics & Gynecology of Big Rapids.  It is claimed that on said date, while pregnant with her first child, Claimant presented herself to Barb Davis, PAC, Dr. Michael Atkins, and Dr. Gail DesNoyers complaining of severe abdominal pain and bleeding.  At that time a diagnosis of a spontaneous abortion was made and a D & C was performed at Mecosta County General Hospital. Claimant was sent home at that time, despite Dr. DesNoyer's [sic] knowledge of Claimant's history of a prior ectopic pregnancy.

Over the course of the next few days, Claimant continued to experience pain and cramping and, on October 7, 1994, was seen at Mecosta County General Hospital by Dr. Michael Atkins.  Claimant was told that the pain she was experiencing was cramps from the D & C she had done and was sent home.

Claimant returned to the hospital on October 8, 1994, wherein it was discovered that Claimant had not had a spontaneous abortion but had an ectopic pregnancy in her left tube which had burst.  Emergency surgery was performed at that time and her left tube was removed.

Claimant had her right tube removed approximately ten years ago and, as a result of the negligence set forth above, she is now unable to have any children.

2.   THE APPLICABLE STANDARD OF PRACTICE OR CARE ALLEGED

Claimant contends that the applicable standard of care required that Obstetrics & Gynecology of Big Rapids, Dr. Gail DesNoyers and Barb Davis, PAC, provide the Claimant with the services of competent, qualified and licensed staff of physicians, residents, interns, nurses and other employees to properly care for her, render competent advice and assistance in the

care and treatment of her case and to render same in accordance with the applicable standard of care.

3. THE MANNER IN WHICH IT IS CONTENDED THAT THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED

Claimant claims that Obstetrics & Gynecology of Big Rapids, Dr. Gail DesNoyers and Barb Davis, PAC, failed to provide her with the applicable standard of practice and care outlined in paragraph 2 above.

4. THE ACTION THAT SHOULD HAVE BEEN TAKEN TO ACHIEVE COMPLIANCE WITH THE STANDARD OF PRACTICE OR CARE

See paragraph 2 above.

5. THE MANNER IN WHICH THE BREACH WAS THE PROXIMATE CAUSE OF CLAIMED INJURY

See paragraph 2 above.

6. NAMES OF HEALTH PROFESSIONALS, ENTITIES, AND FACILITIES NOTIFIED

Obstetrics & Gynecology of Big Rapids, Gail DesNoyers, M.D., Michael Atkins, M.D., Barb Davis, PAC, and all agents and employees, actual or ostensible, thereof.

Plaintiff's notices of intent primarily set forth facts demonstrating an unfavorable outcome—the fact that plaintiff had suffered an ectopic pregnancy and a ruptured "left tube" that was not diagnosed by defendants. Although the notices satisfy some of the requirements of § 2912b, they do not satisfy *all* of those requirements. Missing from the notices are (1) a statement of the particular

13

standard of practice or care applicable to each of the various defendants, (2) statements regarding the manner in which it was claimed that defendants breached the alleged standards of practice or care, (3) statements alleging the actions that should have been taken by defendants, and (4) statements regarding the manner in which defendants' breaches of the standards of practice or care were alleged to have constituted the proximate cause of plaintiff's injury.

### 1. MCL 600.2912b(4)(a): FACTUAL BASIS

We agree with the Court of Appeals that the notices of intent, which generally describe the events that led to plaintiff's alleged injury, properly set out the factual basis for plaintiff's claim.

### 2. MCL 600.2912b(4)(b): STANDARD OF PRACTICE OR CARE

The Court of Appeals panel declined to find fault with plaintiff's statements of the standard of care, noting that (1) "defendants direct us to no authority to establish that the stated standard of care is incorrect, nor do they direct us to what they believe is the proper standard of care," and (2) "[t]he statute does *not* require that the claimant accurately or correctly state the standard of care nor does it declare the notice to be inadequate if the

14

plaintiff is incorrect in stating the standard of care." 252 Mich App 670.

With respect to the panel's first point, it is plaintiff's burden to establish compliance with § 2912b and, in turn, to establish entitlement to application of the notice tolling provision, § 5856(d). See *Roberts I, supra* at 64.

With respect to the panel's second point, we acknowledge that the notice of intent is provided at the earliest stage of a medical malpractice proceeding. Indeed, the notice must be provided before the action can even be commenced. At the notice stage, discovery as contemplated in our court rules, MCR 2.300 *et seq.*, has not been commenced, and it is likely that the claimant has not yet been provided access to the records of the professional or facility named in the notice.[5] It is therefore reasonably anticipatable that plaintiff's averments as to the applicable standard may prove to be "inaccurate" or erroneous following formal discovery; moreover, it is probable that the alleged standard of care will be disputed

---

[5] See MCL 600.2812b(5) (requiring the professional or facility receiving notice to allow the claimant access to all medical records related to the claim that are in the control of the professional or facility within 56 days after receipt of the notice).

15

by the defendants.[6]  In light of these circumstances, the claimant is not required to craft her notice with omniscience.[7]  However, what is required is that the claimant make a good-faith effort to aver the specific standard of care that she *is claiming* to be applicable to each particular professional or facility that is named in the notice.[8]

---

[6] Indeed, the applicable standard of practice or care is often a hotly disputed matter in a medical malpractice action, and opposing expert witnesses are likely to disagree regarding the particular standard to which a defendant should be held.

[7] The statute requires only that the claimant set forth particular *allegations* and *claims* regarding the applicable standard of care, breach, etc.  Accordingly, while the claimant must set forth allegations in good faith, in a manner that is responsive to the specific queries posed by the statute, and with enough detail to allow the potential defendants to understand the claimed basis of the impending malpractice action, the claimant is not required ultimately to prove that her statements are "correct" in the legal sense.

[8] The phrase "standard of practice or care" is a term of art in the malpractice context, and the unique standard applicable to a particular defendant is an element of a medical malpractice claim that must be alleged and proven. *Cox v Flint Bd of Hosp Mgrs*, 467 Mich 1, 10; 651 NW2d 356 (2002).  The applicable standard is governed either by statute (see, for example, MCL 600.2912a[1], which sets forth the particular proofs that a malpractice plaintiff must present with respect to a defendant's "standard of practice or care," depending on whether the defendant is a general practitioner or a specialist) or, in the absence of a statutory standard, by the common law. *Cox, supra* at 5, 20.  The standard of practice or care that is applicable, for example, to a surgeon would likely differ in a given
(continued…)

16

Here, several different medical caregivers were alleged to have engaged in medical malpractice. Yet, rather than stating an alleged standard of practice or care for each of the various defendants—a hospital, a professional corporation, an obstetrician, a physician's assistant, and an emergency room physician—plaintiff's notices of intent allege an identical statement applicable to all defendants[9] in response to § 2912b(4)(b):

> [T]he applicable standard of care required that [the hospital, the P.C., Desnoyers, and Davis] provide the Claimant with the services of competent, qualified and licensed staff of physicians, residents, interns, nurses and other employees to properly care for her, render competent advice and assistance in the care and treatment of her case and to render same in accordance with the applicable standard of care.

With respect to the hospital and the professional corporation, this statement does not allege a standard applicable specifically to a hospital or professional corporation as opposed to any other healthcare professional or facility. Moreover, this statement fails to indicate whether plaintiff was alleging that these defendants were

---

(continued…)
set of circumstances from the standard applicable to an OB/GYN or to a nurse.

[9] Notably, *no* statement of an alleged standard of practice or care is provided with respect to defendant Atkins, the emergency room doctor.

17

vicariously or directly liable to her.[10]   Although it appears from plaintiff's complaint that she is claiming that the hospital and the professional corporation are vicariously liable for the negligence of their agents, the notices of intent implied that plaintiff alleged direct negligence against these defendants for negligently hiring or negligently granting staff privileges to the individual defendants.   Thus, plaintiff's notices neither alleged a standard specifically applicable to the defendant facilities, nor did they  serve as adequate notice to these defendants that plaintiff planned to proceed under a vicarious liability theory at trial.

The section of plaintiff's alleged standard of care that appears to be relevant to individual defendants DesNoyers and Davis states that

> the applicable standard of care required that . . . [they] render competent advice and assistance in the care and treatment of her case and to render same in accordance with the applicable standard of care.

Thus, in response to the statutory query, "What is the applicable standard or practice or care alleged by the

---

[10] See *Cox, supra* at 11 ("A hospital may be 1) directly liable for malpractice, through claims of negligence in supervision of staff physicians as well as selection and retention of medical staff, or 2) vicariously liable for the negligence of its agents.").

claimant?", plaintiff has essentially answered in part: "The standard of care required that defendants adhere to the standard of care." Obviously, this statement is tautological and unresponsive, and it cannot be viewed as minimally compliant with § 2912b(4)(b). The alleged standard also observes that defendants DesNoyers and Davis were required to "properly care for" plaintiff and to "render competent advice and assistance." Such general averments, however, are not adequately responsive to the statutory requirement that the claimant allege an applicable standard of practice or care relevant to the defendant.[11]

Again, plaintiff was not required to provide a statement of alleged standards of care or practice that

---

[11] The dissent argues that nowhere in § 2912b(4) does the Legislature require that a plaintiff allege a "standard applicable specifically" to each defendant and, therefore, neither should this Court. *Post* at 15-16. However, as explained in n 8, the phrase "standard of practice or care" is a term of art. Proof of the standard of care is required in every medical malpractice lawsuit, and the Legislature has chosen to require a plaintiff to address standard of care issues in the notice of intent. Under a proper understanding of this term, the standard applicable to one defendant is not necessarily the same standard applicable to another defendant. See *Cox, supra* at 10. Thus, we are attempting to do nothing more than interpret the Legislature's requirement in § 2912b(4)(b)—that a plaintiff provide a "statement" regarding the applicable "standard of practice or care" alleged.

might ultimately be proven, after discovery and trial, to be correct and accurate in every respect. However, plaintiff was required to make a good-faith averment of *some* particularized standard for each of the professionals and facilities named in the notices.[12] We conclude that plaintiffs' notices fail to comply with § 2912b(4)(b) with respect to each defendant.

### 3. MCL 600.2912b(4)(c): BREACH

In response to § 2912b(4)(c), which requires a claimant to state "[t]he manner in which it is claimed that the applicable standard of practice or care was breached," plaintiff's notice to the hospital states "See paragraph 2

---

[12] We note that in some cases the burden of explication under § 2912b(4)(b) will be minimal. For example, allegations that a physician has extracted the wrong tooth, amputated the wrong limb, or left a surgical instrument embedded in a patient's body cavity would give rise only to a *slight* burden of articulation of the standard of care under § 2912b(4)(b). Under such circumstances it would be obvious to a casual observer that the standard of care would require the physician to extract the correct tooth, amputate the correct limb, or properly account for all surgical instruments. However, in the instant case, plaintiff's allegations are based on an alleged failure to diagnose an ectopic pregnancy and nothing more. Whether the failure to diagnose this condition constituted a breach of the standard of care, in contrast to the above examples, is not obvious from the face of the allegations. Accordingly, plaintiff was required to provide a more exacting statement of the standard of care and of the manner in which it was breached.

20

above." The notice provided to the remaining defendants[13] states:

> Claimant claims that Obstetrics & Gynecology of Big Rapids, Dr. Gail DesNoyers and Barb Davis, PAC, failed to provide her with the applicable standard of practice and care outlined in paragraph 2 above.

The Court of Appeals panel held that the notices complied with § 2912b(4)(c):

> If we look only to the statements in paragraphs two and three of the notices, they arguably do not comply with the statute, particularly with respect to the individual defendants. However, nothing in the statute requires that the notice of intent be in a particular format or that each of the six statutory items be separately listed or identified. If we examine the respective first paragraphs of the notices (the factual basis for the claim), we do find a statement of the manner in which plaintiff claims the standard of practice or care was breached. Specifically, the notices clearly state that the medical personnel incorrectly diagnosed a spontaneous abortion rather than an ectopic pregnancy, resulting in the loss of plaintiff's only remaining fallopian tube, thus rendering her sterile. [252 Mich App 672.]

We agree that nothing in § 2912b(4) requires that the notice be in any particular format. The statute does, however, clearly require the claimant to provide "a

---

[13] As with the statement of the applicable standard of care, the notice contains absolutely *no* statement with respect to a breach of the standard of care by defendant Atkins.

21

statement" of each of the enumerated categories of information, and we disagree with the panel's conclusion that the required information need not be "separately . . . identified." Certainly, the statement must identify, in a readily ascertainable manner, the specific information mandated by § 2912b(4).

The notices fail to identify how the various defendants breached the applicable standards of care. Here, the hospital's notice of intent refers to paragraph 2, in which the alleged standard of practice or care is set out. The notice of intent applicable to the remaining defendants states that defendants, defendant Atkins excluded, "failed to provide [plaintiff] with the applicable standard of practice and care." In both instances, plaintiff has stated, in essence: "Defendants breached the standard of care by breaching the standard of care." Such a circular and unresponsive assertion is not minimally compliant with the statutory mandate that plaintiff provide a statement of the manner in which defendants breached the applicable standards of care.[14]

---

[14] At oral argument, plaintiff's counsel conceded that plaintiff's notice merely stated, in essence, that "the manner in which [the standard of care] was breached is the fact that it was breached," and counsel took the untenable
(continued…)

We are also unable to discern in the paragraphs setting forth the factual basis for the claim any statement of the manner in which the standards of care were breached. The notices indicate that plaintiff complained of severe pain, was diagnosed with a miscarriage, underwent a dilation and curettage procedure, was sent home, returned to the hospital four days later, was diagnosed with an ectopic pregnancy, and underwent surgery to remove her "left tube." Although these are certainly tragic circumstances, the facts as set forth in the notices simply do not serve to notify defendants of the manner in which they breached their respective standard of care. The notices do not aver how plaintiff alleged her treatment by any defendant was deficient. There is no allegation, for

_____

(continued…)

position that this is all that is required by § 2912b(4)(c). Such a construction renders the statutory notice requirement completely nugatory. Moreover, it does not fulfill the statutory purposes of notifying potential malpractice defendants of the basis of the claims against them.

Counsel's construction of § 2912b(4)(c) is analogous to the following hypothetical example: A parent sees that a priceless lamp in his living room is broken. The parent asks his child, "How did the lamp become broken?" The child replies, "The lamp is broken." The repetition of the fact that the lamp is broken is unresponsive to the question that was asked. Similarly, plaintiffs' notices of intent answer the question, "How was the standard of care breached?" with the response, "The standard of care was breached."

example, that any of the defendants failed to perform critical tests, incorrectly diagnosed her condition, or failed to refer her to a specialist in keeping with the appropriate standard of care. Although, perhaps, an inference arises from the recitation of facts that plaintiff was alleging that one or more of the defendants should have earlier diagnosed an ectopic pregnancy, such an "inference" is not sufficient to meet the statutory requirement that plaintiff provide a statement of the *manner* in which each defendant breached the applicable standard of care.[15]

---

[15]Plaintiff's notices of intent state that defendants engaged in "negligence" and, thus, it may said that plaintiff specifically alleged in her notices that a "breach" of the standard of care occurred. However, it is not sufficient under § 2912b(4)(c) to merely assert that a breach occurred, because that section requires that a notice more precisely contain a statement regarding the *manner* in which the breach is alleged to have occurred.

Despite enacting a statute that requires a plaintiff in general terms to provide her contentions regarding six aspects of her claim of medical malpractice, the dissent's view is that the Legislature created a nullity and that a plaintiff satisfies her obligation under this statute by essentially declaring, "I went to the doctor and something bad happened." Contrary to the dissent's assertion that the majority has required a "high degree of specificity"——neither a term nor a concept found in our opinion——what we have required is what the statute expressly requires: A good-faith effort on the part of a plaintiff to answer the statutory questions, including the manner in which the

(continued…)

**4. MCL 600.2912b(4)(d):  ACTION THAT SHOULD HAVE BEEN TAKEN**

In response to § 2912b(4)(d), which mandates a statement of "[t]he alleged action that should have been taken to achieve compliance with the alleged standard of practice or care," plaintiff's notices merely refer the reader to "paragraph 2" (which, on appeal, plaintiff claims should have read "paragraph 1").  The Court of Appeals panel held that the recitations of facts in the notices were sufficient to meet this requirement:

> Clearly, when reading the notices as a whole, plaintiff alleges that the action that should have been taken was to have timely diagnosed the ectopic pregnancy so that it could have been treated without the loss of plaintiff's left fallopian tube.  [252 Mich App 672.]

Once again, we disagree.  Plaintiff has failed to identify *any* particular action that any defendant should have taken in order to achieve compliance with the standard of care.  Defendants are left to guess not only which aspect of plaintiff's treatment was deficient, but what plaintiff alleges defendants should have done differently.

**5.  MCL 600.2912b(4)(e):  PROXIMATE CAUSE**

Plaintiff's notices of intent fail to satisfy the requirement of § 2912b(4)(e) that the notice contain a

_____

(continued...)
plaintiff *claims* that the applicable standard of care was breached.

25

statement of "[t]he manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice." The Court of Appeals held that

> plaintiff clearly states that the misdiagnosis resulted in having to have emergency surgery four days later to remove her only remaining fallopian tube as a result of the tube bursting from the undiagnosed ectopic pregnancy, thus rendering her sterile. This is clearly a statement of the manner in which it is alleged that the breach of the standard of practice or care proximately caused the injury. [253 Mich App 673.]

We disagree with the assertion that plaintiff "clearly state[d]" that a misdiagnosis by any of the defendants resulted in her fallopian tube bursting and in her ensuing sterility. Nowhere in the notices does plaintiff state that any of the defendants misdiagnosed her condition; nor do the notices state any consequences stemming from a misdiagnosis. Indeed, the reader is left to wonder whether plaintiff is alleging that a diagnosis of ectopic pregnancy could have been made in time to avoid the rupture of her "tube," or whether she is alleging that her tube ruptured as a direct result of her treatment by defendants DesNoyers and Davis on October 4, 1996.[16] With no specific

---

[16] Plaintiff's notices of intent state that "as a result of [defendants'] negligence . . . , [plaintiff] is
(continued…)

26

allegations regarding the conduct of any of the named defendants, the notices are insufficient to meet the particularized requirements of § 2912b(4)(e).[17]

6. MCL 600.2912b(4)(f): HEALTH PROFESSIONALS AND FACILITIES

Finally, we agree with the Court of Appeals that the notices of intent, which list "Mecosta County General Hospital and all agents and employees, actual or ostensible, thereof" as well as "Obstetrics & Gynecology of Big Rapids, Gail DesNoyers, M.D., Michael Atkins, M.D.,

---

(continued…)
now unable to have any children." At first blush, this may appear to satisfy the proximate causation requirement of § 2912b(4)(e). However, it is not sufficient under this provision to merely state that defendants' alleged negligence caused an injury. Rather, § 2912b(4)(e) requires that a notice of intent more precisely contain a statement as to the *manner* in which it is alleged that the breach was a proximate cause of the injury.

[17] The dissent urges, on the basis of legislative history, that the Legislature's purpose in enacting § 2912b was to encourage settlement discussions. *Post* at 8. This use of legislative history is questionable. See *In re Certified Question (Kenneth Henes Special Projects Procurement, Marketing, & Consulting Corp v Continental Biomass Industries, Inc),* 468 Mich 109, 114-118 (2003). However, assuming that the Legislature's primary purpose was to facilitate settlement, it is clear from the decision to depart from the generally applicable notice pleading environment created by our court rules that the Legislature believed more particularized statements were required in the context of medical malpractice litigation. Indeed, if settlement is a primary objective of § 2912b, the heightened particularity required by the statute fosters this goal by providing a defendant with a clear understanding of the plaintiff's allegations.

Barb Davis, PAC, and all agents and employees, actual or ostensible, thereof," contain a proper statement of the names of all defendant health professionals and facilities.

### IV. CONCLUSION

Under MCL 600.2912b(4), a medical malpractice claimant is required to provide potential defendants with notice that includes a "statement" of each of the statutorily enumerated categories of information. Although it is reasonable to expect that some of the particulars of the information supplied by the claimant will evolve as discovery and litigation proceed, the claimant is required to make good-faith averments that provide details that are *responsive* to the information sought by the statute and that are as *particularized* as is consistent with the early notice stage of the proceedings. The information in the notice of intent must be set forth with that degree of specificity which will put the potential defendants on notice as to the nature of the claim against them. This is not an onerous task: all the claimant must do is specify what it is that she is *claiming* under each of the enumerated categories in § 2912b(4). Although there is no one method or format in which a claimant must set forth the required information, that information must, nevertheless,

be specifically identified in an ascertainable manner within the notice.

The notices of intent supplied by plaintiff to defendants in this case fail to comply with the statutory mandate. Among the defendants are two different facilities, an obstetrician, an emergency room physician, and a physician's assistant, yet no attempt was made to identify a specific standard of practice or care applicable to any particular defendant. Rather than indicating the *manner* in which the (improperly alleged) standards of care were breached by defendants, the notices simply indicate that the standards were, in fact, breached. Nowhere in the notices does plaintiff state what actions the various defendants should have taken to comply with the appropriate standards of practice or care, or how defendants' conduct constituted the proximate cause of plaintiff's claimed injury. Although the factual recitations in the notices indicate that plaintiff suffered an adverse medical result, this result is not connected in any meaningful way with the conduct of any defendant. Accordingly, plaintiff did not fulfill her obligation under § 2912b, and the statute of limitations was not tolled during the notice period. We therefore reverse the judgment of the Court of Appeals and

reinstate the judgments of the trial court granting summary disposition to defendants.

                              Robert P. Young, Jr.
                              Maura D. Corrigan
                              Clifford W. Taylor
                              Stephen J. Markman

# STATE OF MICHIGAN

## SUPREME COURT

LISA ROBERTS,

    Plaintiff-Appellee,

v                                         No. 122312

MICHAEL ATKINS, M.D.,

    Defendant-Appellant,

and

MECOSTA COUNTY GENERAL HOSPITAL,
GAIL A. DESNOYERS, M.D., BARB
DAVIS, and OBSTETRICS AND
GYNECOLOGY OF BIG RAPIDS, P.C.,
formerly known as GUNTHER, DESNYOYERS
& MEKARU,

    Defendants.

_____

LISA ROBERTS,

    Plaintiff-Appellee,

v                                         No. 122335

GAIL A. DESNOYERS, M.D., BARB
DAVIS, OBSTETRICS AND GYNECOLOGY
OF BIG RAPIDS, P.C., formerly
known as GUNTHER, DESNOYERS &
MEKARU,

    Defendants-Appellants,

and

MICHAEL ATKINS, M.D., and
MECOSTA COUNTY HOSPITAL,
    Defendants.

_____

LISA ROBERTS,

    Plaintiff-Appellee,

v                                    No. 122338

MECOSTA COUNTY GENERAL HOSPITAL,

    Defendant-Appellant,

and

GAIL A. DESNOYERS, M.D., MICHAEL
ATKINS, M.D., BARB DAVIS, and
OBSTETRICS AND GYNECOLOGY OF
BIG RAPIDS, P.C., formerly known
as GUNTHER, DESNOYERS & MEKARU,

    Defendants.
_____

KELLY, J. (*dissenting*).

## INTRODUCTION

We granted leave to appeal to determine what constitutes an adequate notice of intent under MCL 600.2912b(4) preparatory to the filing of a medical malpractice complaint. The majority concludes that the statute requires a high degree of specificity at the notice stage of a potential lawsuit.

I respectfully disagree. Requiring such a level of specificity is inconsistent with the statute's words and purpose. I would hold that the notice of intent must provide sufficient information about a claim that a

2

defendant may ascertain and investigate its basis and determine whether to discuss settlement. After reviewing the notices of intent that plaintiff provided in this case, I conclude that they satisfy the statute's requirements. Therefore, I would affirm the decision of the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

Early in her pregnancy, plaintiff experienced severe abdominal pain and bleeding. The defendant physicians diagnosed a spontaneous abortion, performed a dilation and curettage procedure, and sent plaintiff home to recover.

Plaintiff's pain persisted. Three days later, it worsened and she sought care at the defendant hospital. The emergency room doctor, defendant Atkins, diagnosed cramps and released plaintiff.

Later that night, plaintiff returned to the defendant hospital. It was determined that she had had an ectopic pregnancy that had ruptured her left fallopian tube. The defendant physicians removed plaintiff's left fallopian tube. Because her right fallopian tube had been removed several years earlier, the operation rendered her sterile. Plaintiff brought suit for medical malpractice. She claimed that the physicians' misdiagnoses led to her sterility.

3

Plaintiff's counsel sent to the defendant hospital an initial notice of intent to sue, as required by MCL 600.2912b(4).[1]  Counsel amended the notice approximately a month later, added other defendants who are agents or

---

[1]MCL 600.2912b provides in part:

(4) The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:

(a) The factual basis for the claim.

(b) The applicable standard of practice or care alleged by the claimant.

(c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.

(d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.

(e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.

(f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

4

employees of the hospital, and sent the amended notice to them.

Ultimately, plaintiff brought suit and defendants moved for summary disposition. They asserted that the notices of intent failed to comply with MCL 600.2912b(4), and because by then the statutory period of limitations had expired, plaintiff's claims were barred. The trial court granted the motion. The Court of Appeals vacated the decision and remanded the case. 240 Mich App 175; 610 NW2d 285 (2000). It held that defendants had waived their right to challenge the sufficiency of the notices.

This Court granted leave to appeal. A majority found that a challenge to the sufficiency of the notices had not been waived. It then remanded the case to the Court of Appeals to consider whether plaintiff had complied with the statute's notice requirements. *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57; 642 NW2d 663 (2002) *(Roberts I).* On remand, the Court of Appeals held that the plaintiff had complied with the requirements. *Roberts v Mecosta Co Gen Hosp (On Remand),* 252 Mich App 664; 653 NW2d 441 (2002). We again granted leave to appeal. 468 Mich 869 (2003).

STANDARD OF REVIEW

We review summary disposition judgments de novo. *Harvey v Michigan,* 469 Mich 1, 6; 664 NW2d 767 (2003). We

5

also review questions of statutory interpretation de novo. *Omelenchuk v City of Warren,* 461 Mich 567, 571 n 10; 609 NW2d 177 (2000). See also *Roberts I* at 62.

STATUTORY CONSTRUCTION AND ANALYSIS

The issue before us is whether plaintiff's notices satisfied the requirements of MCL 600.2912b(4). Our duty is to determine what the Legislature intended. *Omelenchuk* at 576 n 19. We begin with the language of the statute, and if the intent of the Legislature is clearly expressed, no further construction is warranted. *Helder v Sruba*, 462 Mich 92, 99; 611 NW2d 309 (2000).

The statute by its terms requires that the notice contain a "statement" of at least six items: (1) the factual basis for the claim, (2) the alleged applicable standard of practice or care, (3) the alleged manner in which the applicable standard of practice or care was breached, (4) the alleged action that should have been taken to comply with the applicable standard of practice or care, (5) the manner in which the breach of the standard of care proximately caused the injury, and (6) the names of all health professionals and health facilities that the claimant is notifying under the statute. MCL 600.2912b(4).

To ascertain what the Legislature intended by this statute, we first examine the meaning of the word

6

"statement." The statute does not define "statement," and a resort to a lay dictionary to ascertain the meaning intended is of limited usefulness. One dictionary provides:

> Statement, n 1. something stated. 2. a communication or declaration in speech or writing, setting forth facts, particulars, etc. 3. a single sentence or assertion: *I disagree with your last statement.* [*Random House Webster's College Dictionary* (1995).]

A "statement" can be merely a general assertion or it can be a detailed description.

Plaintiff argues that the statute requires the former, and defendants argue that it requires the latter. The word as it appears in the sentence is susceptible to both meanings. Thus, to determine what the statute intends, we examine its structure as a whole, and particularly, the text surrounding the word "statement." *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420; 662 NW2d 710 (2003).

In discerning the intended meaning, we consider also the Legislature's apparent purpose in enacting the provision. *In re Wirsing,* 456 Mich 467, 474; 573 NW2d 51 (1998). We may even consider legislative history. *Adrian School Dist v Michigan Pub School Employees Retirement Sys,* 458 Mich 326, 335; 582 NW2d 767 (1998).

The statute in question requires that claimants alleging medical malpractice send a notice of intent to sue to potential defendants at least 182 days before filing a complaint. MCL 600.2912b(1). Each potential party is then required to make available to the others medical records in his possession relating to the claim. MCL 600.2912b(5).

Within 154 days after receiving the notice of intent, the defendants are required to respond to it stating (1) the factual basis for their defense to the claim, (2) the standard of practice or care that they allege is applicable, (3) the manner in which they claim to have complied with the standard of care, and (4) the reasons why they contend that they were not the proximate cause of the plaintiff's alleged injury. MCL 600.2912b(7).

The statute anticipates that the defendants will often challenge the alleged applicable standard of practice or care and the manner in which it was breached. *Id*. The statutory period of limitations is tolled during the waiting period after the notice of intent is sent. MCL 600.5856(d). The 182-day waiting period before the filing of a complaint is immediately lifted if the defendants communicate in writing that they do not intend to settle the claim. MCL 600.2912b(9).

The overall structure and the operation of the notice provision suggest that the Legislature intended the act to encourage settlement discussions.[2] The 182-day waiting period enables the parties to engage in settlement discussions before initiating a lawsuit, possibly avoiding litigation entirely. During this period, information is exchanged without regard to the formal rules of discovery.

Moreover, the plaintiff is effectively immobilized while awaiting a response from the defendants. The waiting period is waived only if the defendants file written notice that they do not intend to settle the claim.

At this stage in the dispute, it is unlikely that all anticipated experts and witnesses will have been identified and deposed. Theories of liability and defenses may not have been developed with precision. A higher level of specificity about a claim emerges from the information exchanged by the parties *after* the notice is sent.

The statute works no unfairness on defendants. The potential defendants who receive the notice assuredly possess a high level of medical expertise. They do not require information of great specificity in order to begin

---

[2] This conclusion is buttressed by statements in the statute's Senate Legislative Analysis, SB 270, August 11, 1993, and House Legislative Analysis, HB 4403-4406, March 22, 2993.

investigating an impending lawsuit. Also, most of the records pertinent to a medical malpractice claim are likely to be under the control of the defendants. A general assertion of the basis for the claim and of the items required by the statute is sufficient to inform them about the claim and to encourage settlement discussions.

Moreover, the provision does not require a "unique standard," "specific" information, or a "particularized" statement as the majority asserts. *Ante* at 16 n 8, 21, 19. Had the Legislature intended extensive detail in the notice, it would have required it.

Numerous other statutes specify "detailed," "complete," or "full" statements, or statements made "with specificity." In the State Employees' Retirement Act, for example, each member is required to file a "detailed statement" of his prior service as an employee. MCL 38.14.

MCL 500.424(2) in the Insurance Code provides:

> In addition to subsection (1), an alien insurer shall make and execute under oath a report of its financial standing and of its deposit together with a *full statement* of its business in the United States for the year preceding the statement pursuant to section 438. [Emphasis added.]

MCL 462.2(2) in the railroad commission act requires the governor to provide a "complete statement" of the charges against a railroad commissioner after removing the commissioner for

neglect of duty or malfeasance. MCL 333.22231(4) states:

> (4) Before a final decision on an application is made, the bureau of the department designated by the director as responsible for the certificate of need program shall issue a proposed decision with *specific* findings of fact in support of the proposed decision with regard to each of the criteria listed in section 22225. The proposed decision also shall *state with specificity* the reasons and authority of the department for the proposed decision. The department shall transmit a copy of the proposed decision to the applicant. [Emphasis added.]

These provisions demonstrate that the Legislature knows what phrasing to use when it intends to require extensive detail. Because it did not explicitly mandate such specificity in this statute, we should refrain from adding it ourselves.

In the past, the Court has avoided making a requirement that notices be detailed if they serve the object of the statute and do not prejudice the defendant. *Hummel v Grand Rapids,* 319 Mich 616, 625; 30 NW2d 372 (1948). The decision in *Omelenchuck* recognized that tolling provisions should not be traps for the unwary and that, without proper notice, there can be no tolling. Given that medical malpractice actions are complex and fact-intensive, the Court is ill-advised to require a

11

detailed blueprint for notices of intent where the Legislature did not.[3] *Omelenchuck* at 576, n 19.

## FACTUAL ANALYSIS

With these considerations in mind, I examine the notices that plaintiff sent in this case to determine if they satisfy the statute.

The September 19, 1996, notice of intent, amending the August 15, 1996, notice sent to the defendant hospital set out the following factual basis:

> This is a claim for negligence which occurred on October 4, 1994, at Mecosta County General Hospital. It is claimed that on said date while pregnant with her first child, Claimant presented herself to Mecosta County General Hospital complaining of severe pain. At that time a diagnosis of a spontaneous abortion was made and a D and C was performed. Claimant was sent home at that time.
>
> Over the course of the next few days Claimant continued to experience pain and cramping and, on October 7, 1994, was again seen at Mecosta County General Hospital. Claimant was told that the pain she was experiencing was cramps from the D and C she had done and was sent home.

---

[3] The complex nature of medical malpractice would deter the Legislature from requiring a high degree of specificity in notices of intent to sue. The Legislature is presumed to be aware of existing law. This includes judicial interpretations of statutes. See *People v Schultz*, 435 Mich 517, 543-544; 460 NW2d 505 (1990). That renders it more telling when the Legislature chose not to use the same or similar words here as it used in other instances when it wished to require detail.

Claimant returned to the hospital on October 8, 1994, wherein it was discovered that Claimant had not had a spontaneous abortion but had an ectopic pregnancy in her left tube which had burst. Emergency surgery was performed at that time and her left tube was removed.

Claimant had her right tube removed approximately ten years ago and, as a result of the negligence set forth above, she is now unable to have any children.

The September 23, 1996, notice of intent sent to the remaining defendants gave the following factual basis:

This is a claim for negligence which occurred on October 4, 1994, at Obstetrics & Gynecology of Big Rapids. It is claimed that on said date while pregnant with her first child, Claimant presented herself to Barb Davis, PAC, Dr. Michael Atkins, and Dr. Gail DesNoyers complaining of severe abdominal pain and bleeding. At that time a diagnosis of a spontaneous abortion was made and a D & C was performed at Mecosta County General Hospital. Claimant was sent home at that time, despite Dr. DesNoyer's [sic] knowledge of Claimant's history of a prior ectopic pregnancy.

Over the course of the next few days, Claimant continued to experience pain and cramping and, on October 7, 1994, was seen at Mecosta County General Hospital by Dr. Michael Atkins. Claimant was told that the pain she was experiencing was cramps from the D & C she had done and was sent home.

Claimant returned to the hospital on October 8, 1994, wherein it was discovered that Claimant had not had a spontaneous abortion but had an ectopic pregnancy in her left tube which had burst. Emergency surgery was performed at that time and her left tube was removed.

Claimant had her right tube removed

13

approximately ten years ago and, as a result of the negligence set forth above, she is now unable to have any children.

In these statements, plaintiff set out the factual circumstances, alleged an initial misdiagnosis, and stated the correct diagnosis.

The September 19 notice articulated the applicable standard of care:

> Claimant contends that the applicable standard of care required that Mecosta County General Hospital provide the claimant with the services of competent, qualified and licensed staff of physicians, residents, interns, nurses and other employees to properly care for her, render competent advice and assistance in the care and treatment of her case and to render same in accordance with the applicable standards of care.

Similarly, the September 23 notice contained the following:

> Claimant contends that the applicable standard of care required that Obstetrics & Gynecology of Big Rapids, Dr. Gail DesNoyers and Barb Davis, PAC, provide the Claimant with the services of competent, qualified and licensed staff of physicians, residents, interns, nurses and other employees to properly care for her, render competent advice and assistance in the care and treatment of her case and to render same in accordance with the applicable standards of care.

Our courts have long recognized that medical malpractice is generally the failure to exercise that degree of skill, care, and diligence exercised by members of the same medical profession. *Dorris v Detroit*

14

*Osteopathic Hosp Corp,* 460 Mich 26; 594 NW2d 455 (1999); *Adkins v Annapolis Hospital*, 116 Mich App 558, 564, 323 NW2d 482 (1982), affirmed 420 Mich 87; 360 NW2d 150 (1984). Plaintiff's notices state that the standard of care is to provide competent services. Because this is sufficiently close in meaning to exercising professional care, it meets the requirement of MCL 600.2912b(4)(b) to delineate the appropriate standard of care.

Where the standard of care is stated generally, it is unsurprising that the same standard is specifically applicable to each defendant. The majority's conclusion that the Legislature intended that there be the requirement of a unique "standard applicable specifically" to each defendant, *ante* at 19, is myopic. This requirement is not in the statute. Hence, it does not exist.

To state the manner in which the alleged standard of care was breached under MCL 600.2912b(4)(c), the September 19 notice to the defendant hospital refers to paragraph two of the notice. The September 23 notice contains the following statement: "Claimant claims that Obstetrics & Gynecology of Big Rapids, Dr. Gail DesNoyers and Barb Davis, PAC, failed to provide her with the applicable standard of practice and care outlined in paragraph 2 above." It is manifest that plaintiff claims that the

15

actions of the defendant physician did not fulfill the duty of care owed to plaintiff.

Both notices refer to paragraph two of the respective notices to state the "[alleged] action that should have been taken to achieve compliance with the alleged standard of practice or care" and "the manner in which [it is alleged] the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice." MCL 600.2912b(4)(d), (e). When these paragraphs are read together with the first paragraphs, they state that the defendants should have correctly diagnosed plaintiff according to their professional duty. They assert that a correct diagnosis would have prevented the serious medical injury that plaintiff suffered. Finally, the notices name the defendants. MCL 600.2912b(4)(f).

I agree with the Court of Appeals that these notices are not "picture[s] of clarity" or "the 'perfect notice.'" 252 Mich App 673. However, I would find them sufficient under the statute.[4]

---

[4] Ironically, this case highlights why the Legislature did not require a detailed statement. A potential defendant is under no obligation to challenge upon its receipt the sufficiency of the notice of intent to sue. *Roberts I.* The plaintiff, while awaiting the defendant's response, cannot be assured that the notice is legally
(continued…)

16

CONCLUSION

I would find that the Legislature intended that parties alleging medical malpractice under MCL 600.2912b(4) provide notice of intent to sue that includes a succinct statement of certain enumerated items. It did not intend that the statement contain extensive details. The statement simply must provide notice of a potential claim sufficient to allow potential defendants to ascertain the basis for the claim and enter into settlement discussions.

The statements in the notices of intent to sue provided by plaintiff in this case satisfied the requirements of MCL 600.2912b(4). They addressed each of the statutorily enumerated items and provided adequate notice of plaintiff's claims. Defendants were given enough information to investigate the basis for the claims and consider settlement. Defendants have not asserted that they misunderstood the notices; they have asserted merely that the notices were insufficient under the statute.

---

(continued…)
sufficient. If its sufficiency should be challenged and found to be deficient only after a lawsuit has been filed, the period of limitations likely will have expired on the claim. I believe that the Legislature did not intend to impose particularized requirements on an injured party who is effectively immobilized until either the defendant responds or the waiting period elapses.

17

For these reasons, I would affirm the decision of the Court of Appeals.

                                        Marilyn Kelly
                                        Michael F. Cavanagh
                                        Elizabeth A. Weaver

18