*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TEDDY WILLIAM BROWN, JR,

Defendant-Appellant.

UNPUBLISHED
September 17, 2020

No. 346891
Alger Circuit Court
LC No. 2017-002279-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TEDDY WILLIAM BROWN, JR,

Defendant-Appellant.

No. 346892
Alger Circuit Court
LC No. 2017-002280-FC

Before: REDFORD, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions in two cases that were consolidated for trial. In LC No. 2017-002279-FC (COA No.346891), the jury convicted defendant of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (sexual penetration with a person under the age of 13), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with a person under the age of 13). In LC No. 2017-002280-FC (COA No. 346892), the jury convicted defendant of gross indecency, MCL 750.338b, disseminating sexually explicit matter to a minor, MCL 722.675, and two counts of using a computer to commit a crime, MCL 752.797(3)(c) and (d). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, in both cases, imposing concurrent prison sentences of 25 to 40 years for the CSC-I conviction, 8 to 30 years for the CSC-II conviction, 2 to 10 years for the gross indecency conviction, 2 to 4 years for the dissemination of sexually explicit matter conviction, 2 to 8 years

for one unlawful use of a computer conviction, and 2 to 14 years for the other unlawful use of a computer conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant formerly lived in the same household as the victim, her mother, and the victim's siblings. The victim testified that defendant began abusing her when she was around five or six years old. She explained that defendant entered her bedroom at night while she was sleeping. Initially, the abuse involved defendant touching the victim's vagina with his hand, which occurred two or three days a week, but eventually progressed to defendant penetrating the victim's vagina with his penis. The victim first disclosed the allegations to a counselor in 2015, which led to an investigation by Child Protective Services (CPS) that resulted in no charges at that time. In 2017, the victim began communicating with defendant over Facebook, which led to Facebook messaging discussions of a sexual nature that included admissions by defendant in which he referred to sexual activity with the victim. Defendant also sent the victim nude photographs and videos of himself masturbating.

In LC No. 2017-002279-FC, the jury convicted defendant of CSC-I and CSC-II for sexually abusing the victim before she was 13 years old. In LC No. 2017-002280-FC, the jury convicted defendant of gross indecency, disseminating sexually explicit matter to a minor, and two counts of using a computer to commit a crime for conduct related to the Facebook exchanges in 2017.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that his trial counsel provided him ineffective assistance. Defendant did not raise these claims in a motion for a new trial or request a *Ginther*[1] hearing in the trial court. Defendant moved in this Court for remand for a *Ginther* hearing twice. This Court denied his first such motion without prejudice because defendant failed to persuade the Court of the necessity of a remand at the time. *People v Brown*, unpublished order of the Court of Appeals entered January 17, 2020 (Docket Nos. 346891, 346892).

This Court held in abeyance defendant's second motion for a *Ginther* hearing, which was filed August 14, 2020, pending oral argument in these two matters on September 3, 2020. *People v Brown*, unpublished order of the Court of Appeals entered August 20, 2020 (Docket Nos. 346891, 346892). This Court has since issued an order denying defendant's second motion for a *Ginther* hearing. *People v Brown*, unpublished order of the Court of Appeals entered September 4, 2020 (Docket Nos. 346891, 346892).

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review the trial court's findings of fact, if any, for clear error, and review de novo its conclusions of law.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. We also review de novo constitutional issues. *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003).

Defendant bears the burden of establishing that his defense counsel provided him ineffective assistance by showing that: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks and citation omitted). Defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52 (citation omitted). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999) (citation omitted). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017) (quotation marks and citation omitted). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Further, defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## 1. FAILURE TO CALL OR QUESTION ALIBI AND CHARACTER WITNESSES

Defendant first claims that defense counsel provided ineffective assistance by not calling a number of witnesses who would have testified about his whereabouts during the times the videos of a male masturbating were uploaded and sent to the victim or if he did call the witness he failed to question him on the topic. Defendant also maintains that defense counsel should have called a number of character witnesses who would have offered favorable testimony regarding his character. We disagree.

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which [this Court] will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation and citations omitted). The failure to call a supporting witness does not inherently amount to ineffective assistance of counsel, and there is no "unconditional obligation to call or interview every possible witness suggested by a defendant." *People v Beard*, 459 Mich 918, 919; 589 NW2d 774 (1998). "[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Dixon*, 263 Mich App at 398 (citation omitted). A substantial defense is one that "would have affected the outcome of the proceeding." *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994) (citation omitted).

Defendant has not supported his claim that the alleged alibi witnesses would have testified as he suggests. When an ineffective-assistance claim is premised on an attorney's failure to call

an alibi witness, the defendant must demonstrate that the witness would have provided favorable alibi testimony. *People v Pickens*, 446 Mich 298, 327; 521 NW2d 797 (1994). Defendant has not presented an affidavit from any of the alleged alibi witnesses. Instead, he offers as proof what he believes the individuals may have testified at trial. Without affidavits, however, defendant's representations merely speculate that their testimony would have been favorable. Such conjecture does not establish ineffective assistance of counsel. See *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). Defendant has failed to establish the necessary factual predicate to succeed on his claim that defense counsel provided ineffective assistance by failing to call alibi witnesses. *Id.*; *Carbin*, 463 Mich at 600.

Moreover, even if the witnesses would have testified as defendant suggests, a reasonable probability does not exist that the outcome would have been different if they had been called. Defendant's argument is predicated on his contention that such alibi witnesses would have established that he could not have recorded the videos on the dates they were sent to the victim because the witnesses could testify as to his whereabouts during the dates. However, the record indicates that the content of the messages sent to the victim in the videos were not recorded at the time they were sent. Even if the witnesses had testified regarding defendant's presence with them on the dates in question, such testimony would not have rebutted or even cast doubt on the evidence that the videos were made at one time and sent via defendant's Facebook account at a different time to the victim. The jury had more than ample evidence from which it could find beyond a reasonable doubt that defendant sent the prerecorded videos to the victim, even while with or in the presence of others. Defendant's speculative offer of proof provides no indication that the alleged witnesses would have, or could have, testified that defendant lacked possession or use of his phone on the days and specific times in question. Defendant has failed to establish the necessary factual predicate to succeed on his claim that defense counsel provided ineffective assistance by failing to call alibi witnesses. *Pratt*, 254 Mich App at 430; *Carbin*, 463 Mich at 600.

Respecting the alleged character witnesses, defendant conjectures that they would have testified regarding his good sexual morals and that he was not a child abuser. Here again, however, defendant has failed to provide any supporting affidavits specifying the substance of each witness's proposed testimony. Defendant has failed to establish the necessary factual predicate to succeed on his claim that defense counsel provided ineffective assistance by failing to call these character witnesses. *Pratt*, 254 Mich App at 430; *Carbin*, 463 Mich at 600. The record reflects that defense counsel called witnesses on defendant's behalf who testified that, based on everything they knew, they not only doubted the victim's allegations but considered them false. Further, they testified favorably about defendant's character. We will not second-guess defense counsel's strategic reasons for not calling such witnesses and cannot conclude based upon the record that defense counsel's decisions regarding witnesses was objectively unreasonable. Moreover, we are not persuaded that, but for defense counsel's failure to call the alibi and character witnesses, the outcome of defendant's trial would have been different. The prosecution presented substantial evidence from which a jury could find defendant guilty beyond a reasonable doubt of the charged offenses.

## 2. EVIDENCE OF VICTIM'S VIRGINITY

Defendant next argues that defense counsel provided ineffective assistance by not calling witnesses to testify about a statement allegedly made by the victim in 2018 that she had only recently lost her virginity. We disagree.

Defendant fails to provide an affidavit or other appropriate offer of proof to support his claim that the witnesses would have testified consistently with defendant's assertion. *Pratt*, 254 Mich App at 430. More importantly, however, defendant fails to explain why this evidence would not be precluded by the rape-shield statute, even if offered as impeachment evidence. MCL 750.520j provides, in pertinent part:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g1 unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> > (a) Evidence of the victim's past sexual conduct with the actor.
>
> > (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

Evidence regarding the victim's virginity is not one of the listed exceptions. Our Supreme Court has held that evidence that does not fall within the statute is not admissible even for impeachment purposes. "By enacting a general exclusionary rule, the Legislature recognized that in the vast majority of cases, evidence of a rape victim's prior sexual conduct with others, and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment is inadmissible." *People v Hackett*, 421 Mich 338, 347-348; 365 NW2d 120 (1984) (citation omitted). In *Hackett*, the Court recognized certain limited situations in which such evidence may be relevant and its admission required to preserve a defendant's constitutional right of confrontation. *Hackett* specifically recognized three situations: (1) where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness's bias; (2) where evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge; and (3) where the defendant should be permitted to show that the complainant has made false accusations of rape in the past. *Id.* at 348. Testimony regarding the victim's virginity does not fit any of these exceptions. Accordingly, such evidence would not have been admissible and defense counsel's failure to seek its admission of inadmissible evidence does not constitute ineffective assistance.

## 3. QUESTIONING OF CPS CASEWORKER AND ADMISSION OF CPS REPORT

Defendant next argues that defense counsel provided ineffective assistance by choosing to cross-examine the CPS caseworker in a manner that elicited inadmissible hearsay. Defendant also complains that counsel's actions allowed the jury to view an unduly prejudicial CPS report. We disagree.

The record reflects that defense counsel questioned the caseworker about statements made by the victim and by others to point out inconsistencies between the victim's trial testimony and her prior statements during the CPS investigation. The record reflects that defense counsel elicited testimony that pointed out a number of discrepancies for the purpose of challenging the victim's memory, bias, and her veracity. Defense counsel also elicited testimony that called into question whether anyone knew of or had ever seen the abuse as claimed by the victim. The victim testified that no one had seen any of the abuse, but that there had been one "close call" where someone almost discovered it. When questioned whether she had ever told anyone that her grandmother was aware of the abuse or that the 2015 incident ended when her grandmother caught defendant in the victim's room, the victim testified that she did not recall. The CPS caseworker, however, reported that the victim told her that her grandmother saw her during one of the occasions that defendant sexually abused her and that her grandmother asked her the next day why she was having sex with defendant. Defense counsel questioned the victim's grandmother whether she had knowledge that any abuse had occurred. She denied any knowledge. The CPS caseworker's testimony sharply contrasted with the victim's testimony.

Defense counsel also sought to introduce statements made by the victim's father during a CPS interview contained in the CPS report. The parties disputed the admissibility of the report and portions of its content and eventually agreed to the admission of a redacted-version CPS report. Defense counsel then cross-examined the CPS caseworker regarding the report's indication that the victim's father had told the interviewer that he had never heard of any abuse before the revelation that led to CPS involvement. The victim's father also told the interviewer that he had not witnessed any abuse. The record reflects that defense counsel used the report to present the jury evidence favorable to the defense.

We find no merit to defendant's argument that the statements elicited by trial counsel were inadmissible hearsay. "Where a witness testifies that a statement was made, rather than about the truth of the statement itself, the testimony is not hearsay." *People v Harris*, 201 Mich App 147, 150-151; 505 NW2d 889 (1993). Defense counsel did not elicit the statements for the purposes of establishing the truth of the matters asserted, but rather for impeachment purposes and to advance the defense strategy to cast doubt upon the victim's testimony and allegations of sexual abuse. The record indicates that defense counsel's decision to question the caseworker and to introduce the CPS report served a strategic purpose, and the mere fact that a strategy did not work, does not render defense counsel's performance ineffective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

4. IMPEACHMENT OF THE VICTIM WITH HER INCONSISTENT STATEMENTS.

Defendant next argues that defense counsel provided ineffective assistance by failing to properly cross-examine the victim to impeach her with prior inconsistent statements regarding whether she heard defendant's pants unzipping before he sexually abused her, whether the sexual abuse first occurred when she was five or six years old as she testified at trial, or when she was six or seven as she testified at the preliminary examination, and by not asking the victim how she knew that the videos depicted defendant when she testified that the abuse occurred in the dark, while she had her eyes closed. We disagree.

The record reveals that defense counsel extensively cross-examined the victim, which included pointing out inconsistencies in her account of where the first alleged abuse occurred, whether she told anyone that abuse occurred in 2015, and whether she told anyone that her grandmother had witnessed the abuse. Defense counsel also questioned the victim about her motivations for deciding to Facebook message defendant, whether she had sent defendant naked photographs of herself, and why she did not tell anyone about the messages before her grandmother found the tablet that she used to communicate with defendant. The record also reflects that defense counsel questioned the victim about her motivation to lie, including whether she hated defendant and wanted to get him in trouble. All of these matters were highly probative of the victim's veracity and cast doubt upon her accusations and motivation for her conduct. Defense counsel's decision not to challenge the victim regarding inconsistent testimony about precisely when the abuse began, whether at age five or six or age six or seven, does not establish that he performed below an objective standard of reasonableness. Such cross-examination may have challenged the specificity of the victim's memory as a young child but would not have undermined her testimony that defendant sexual abused her repeatedly starting when she was a young child and continuing over an extended period progressing from inappropriate touching to penetration.

Defendant asserts that defense counsel should have cross-examined the victim regarding hearing defendant unzipping his pants to challenge whether the victim actually knew that defendant had engaged in vaginal intercourse instead of digital penetration. Such testimony, however, would not have exonerated defendant or effectively cast doubt on the victim's allegations of sexual abuse because the record reflects that the victim provided a number of other reasons for why she knew that defendant had used his penis. Regardless, even if such evidence may have challenged her allegations of penile penetration, it would not negate her testimony of digital penetration which also constitutes sexual penetration for purposes of CSC-I. MCL 750.520a(q). Accordingly, defendant has not shown that defense counsel's performance in cross-examining the victim fell below an objective standard of reasonableness. Even if defense counsel's performance in this regard fell below the standard, defendant has failed to establish that but for defense counsel's deficient performance the outcome of defendant's trial would have been different.

We also find no merit to defendant's claim of ineffective assistance because defense counsel did not question the victim about how she knew that defendant was the person in the videos when the alleged sexual abuse occurred in the dark and she could not have recognized defendant's penis in the videos. Evidence, however, established that defendant acknowledged in various messages to the victim that he sent her the videos. The victim testified that she knew that the messages came from defendant because of the knowledge of her life that the sender referenced and other photographs he shared with her including selfies. The Facebook messaging evidence submitted by the prosecution corroborated the victim's testimony. Defendant, therefore, has not shown that defense counsel's performance in cross-examining the victim in this regard fell below the applicable standard or that but for his performance the outcome of defendant's trial would have been different.

5. DEFENDANT'S DECISION NOT TO TESTIFY

Defendant next argues that defense counsel provided ineffective assistance by convincing him not to testify out of concern about the prosecution using evidence of other allegations

involving another child which defendant asserts would likely have been excluded had the prosecution tried to introduce it. We disagree.

"Although counsel must advise a defendant of th[e] right [to testify], the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). This Court presumes that defense "counsel's advice to defendant not to testify on his own behalf" is sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). Although defendant now claims that he would have testified, he has not established that his counsel failed to fully advise him of his right to testify on his own behalf, or that he did not knowingly and voluntarily waive his right to do so. Moreover, if defense counsel advised defendant not to testify based on evidence the prosecution would seek to admit regarding other sexual abuse perpetrated by defendant against another victim, defendant has not demonstrated the unsoundness of such advice. Under MCL 768.27a(1), "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." A "listed offense" includes CSC-I and CSC-II. MCL 28.722(w)(*iv*) and (*v*). Although defendant characterizes the other allegations of sexual misconduct as "irrelevant," he fails to explain why such allegations would not have been admissible under MCL 768.27a(1). Accordingly, defendant has failed to prove that defense counsel's advice fell below the applicable standard or that but for his counsel's defective performance the outcome of his trial would have been different.

## B. JUDICIAL MISCONDUCT

Defendant also argues that he is entitled to a new trial because the trial judge remarked during trial that he knew members of the victim's extended family. Because defendant made no objection to the trial court's remarks at trial, this issue is unpreserved. Accordingly, we review this unpreserved claim of error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To establish the right to a new trial, defendant must prove that 1) an error occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected defendant's substantial rights. *Id*. If defendant proves these three requirements, "an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

In this case, during testimony by the victim's uncle who defendant called as a witness, the trial court interrupted to ask the witness the name of his father. After the witness responded, the trial court remarked: "Ron, okay. That's just–I've known all the Graves' over time, and I was just curious if it was Steve or Ron. Thank you." Such remarks lacked relevance to the proceedings but the record does not reflect that the remarks impacted the proceedings in any manner. The remarks do not intimate that the trial court lacked impartiality nor did the remarks undermine or bolster the witness's testimony.

To the extent that the trial court may be said to have plainly erred by making such remarks, we are not persuaded that the remarks affected defendant's substantial rights. The record reflects that the trial court instructed the jury that its comments, rulings, summary of the evidence, and

instructions were not evidence and that they were to decide defendant's guilt or innocence based on the evidence alone. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Further, reversal is not warranted because the plain error did not result in the conviction of an actually innocent defendant. The prosecution presented substantial evidence from which a jury could find defendant guilty of the charged offenses beyond a reasonable doubt. The record also does not establish that the plain error seriously affected the fairness, integrity, or public reputation of judicial proceedings. Defendant, therefore, has failed to establish that the plain error affected his substantial rights entitling him to relief.

Defendant also argues that the trial court's remarks constituted judicial misconduct. In determining whether a trial judge's comments or conduct deprived a defendant of a fair trial, this Court considers whether the trial judge's "conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This is a fact-specific inquiry to be considered in the context of a given case. *Id*. at 171-172.

In this case, the trial court's remarks were isolated and brief. The trial court did not express an opinion about the witness, the witness's family, or anything related to the case. We find no merit to defendant's speculation that the trial court's remarks may have been regarded by the jury as sympathetic to the victim or her family. Further, the trial court later instructed the jury that:

> when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence.

Such instruction sufficed to cure any misperception by the jury based on the trial court's brief remarks. *Stevens*, 498 Mich at 177. Accordingly, defendant has failed to establish judicial misconduct.

Defendant also asserts that defense counsel provided him ineffective assistance by not objecting to the trial court's remarks and requesting a mistrial. This argument lacks merit. Defendant has failed to establish that defense counsel acted in an objectively unreasonable manner by failing to object and request a curative instruction or a mistrial. Defense counsel likely would not have had such objection sustained nor been granted a mistrial because he could not establish that the remarks prejudiced him in any manner. Accordingly, an objection or request for a mistrial would have been futile. Further, defendant cannot establish that, but for the trial court's comment and the lack of objection or request for a curative instruction, defendant had a reasonable chance of acquittal. Given the trial court's instructions to the jury, no reasonable probability exists that the outcome of defendant's trial would have been different.

## C. PROSECUTORIAL CONDUCT

Defendant next argues that he was denied a fair trial when the investigating officer testified that his questioning of defendant ended when defendant invoked his right to remain silent and to consult an attorney. Defendant acknowledges that this issue is unpreserved because he did not object to the challenged testimony at trial. Accordingly, we review this issue for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

At trial, the investigating officer explained that after analyzing the Facebook messaging between defendant and the victim he conducted a police interview with defendant and he confronted defendant with the evidence of the Facebook messages, photos, and videos that the police had obtained. The officer testified that defendant claimed that someone must have "hacked" his Facebook account. The prosecutor continued:

> *Q*. Okay. Did you argue with him any more about that?
>
> *A*. Well, I—I did. I—I think argue may be a bad term. But I did ask him, after he told me that. I said, so, you're telling me that somebody hacked your Facebook, that had intimate knowledge of this previous investigation? And I believe it was then, he said, I want to talk to a lawyer—
>
> *Q*. Okay.
>
> *A*: —I don't want to answer any more questions. So, the questions stopped, pertaining to this investigation.

Defendant argues that the prosecutor engaged in misconduct by eliciting his post-*Miranda*[2] invocation of his right to remain silent. We disagree.

We review claims of prosecutorial misconduct to determine "whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. A prosecutor may not question a police officer regarding a defendant's invocation of his right to counsel or to remain silent. *People v Knapp*, 244 Mich App 361, 383-384; 624 NW2d 227 (2001). "In general, prosecutorial references to a defendant's postarrest, post-*Miranda* silence violate a defendant's due-process rights under the Fourteenth Amendment of the United States Constitution." *People v Shafier*, 483 Mich 205, 212-213; 768 NW2d 305 (2009). "In general, any reference to a defendant's postarrest, post-*Miranda* silence is prohibited, but in some circumstances a single reference to a defendant's silence may not amount to a violation of [*Doyle v Ohio*, 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976),] if the reference is so minimal that 'silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference . . . .' "

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Shafier*, 483 Mich at 214-215, quoting *Greer v Miller*, 483 US 756, 764-765; 107 S Ct 3102; 97 L Ed 2d 618 (1987).

In *People v Dennis*, 464 Mich 567; 628 NW2d 502 (2001), our Supreme Court considered circumstances where a police officer testified that his interrogation of the defendant ceased when the defendant invoked his *Miranda* rights. In *Dennis*, the following questioning occurred:

> *Q.* What type of investigation follow-up did you do with regard to this?
>
> *A.* I went out and attempted to interview [defendant], and at that time it was refused. He wished to speak to an attorney prior to me asking him any questions. [*Id.* at 570.][3]

The defendant's counsel unsuccessfully moved for a mistrial and the trial court later provided a specific curative jury instruction. *Id.* at 571. Our Supreme Court distinguished the case from *Doyle* where "the prosecution unabashedly used the silence of each of two defendants in the face of *Miranda* warnings against them at their respective trials." *Id.* at 574-575. Our Supreme Court observed that the officer in *Dennis* responded to the prosecutor's open-ended question regarding further investigation and that the prosecution had not designed the question to elicit testimony about the defendant's invocation of his right to an attorney. *Id.* at 575. The Court concluded: "In our view, it is evident that the prosecutor's question, while it may have been inartfully phrased, was aimed at eliciting testimony about these investigative efforts, not about the defendant's refusal of a police interview." *Id.* Our Supreme Court then noted that, apart from this "single impropriety, the prosecution did not call attention to defendant's silence." *Id.* at 577. The Court held that, because the prosecution inadvertently elicited the testimony and never later referenced the defendant's silence or attempted to use his silence as evidence against him, and because the trial court provided a curative instruction, no violation of the defendant's rights occurred. *Id.* at 578-579, 583.

In this case, as in *Dennis*, the prosecution inquired regarding the officer's investigation and did not ask him to comment on defendant's invocation of his right to counsel or right to remain silent. The officer's statement that the interview ended because defendant invoked his right to counsel occurred without prompting by the prosecution. After the improper response, the prosecution immediately steered the questioning away from the officer's response and focused on another part of the investigation. Further, the prosecution never mentioned or alluded to defendant's silence nor implied that the jury should infer from defendant's silence evidence of guilt. The officer's brief remark concerning defendant's silence did not amount to a constitutional violation, given that the prosecution inadvertently elicited the testimony and never attempted to use his silence as evidence against him. Accordingly, defendant has not established a violation of his rights or an outcome-determinative plain error.

Respecting defendant's related ineffective-assistance claim, he has not shown that defense counsel performed deficiently by not requesting a curative instruction or moving for a mistrial.

---

[3] The Court noted that the prosecution had effectively stipulated that defendant was in police custody at this point and had been apprised of his *Miranda* rights. *Id.* at 570-571.

Although defense counsel could have objected and sought a curative instruction, by not doing so defense counsel did not draw further attention to defendant's silence in the face of accusations of serious criminal conduct. Further, because the officer's single reference to defendant's response did not rise to the level of a due-process violation, defense counsel cannot be faulted for failing to request a mistrial. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

## D. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the trial court erred by denying his motion for a new trial on the ground that his convictions of CSC-I and CSC-II were against the great weight of the evidence. We disagree.

A trial court's decision on a motion for a new trial is reviewed for an abuse of discretion. *People v Gadomski*, 232 Mich App 24, 27; 592 NW2d 75 (1998). "A verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Solloway*, 316 Mich App 174, 182-183; 891 NW2d 255 (2016) (quotation marks and citations omitted). Questions regarding credibility are not sufficient grounds for relief unless the "testimony contradicts indisputable facts or laws," the "testimony is patently incredible or defies physical realities," the "testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror," or the "testimony has been seriously impeached and the case marked by uncertainties and discrepancies." *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (quotation marks and citations omitted). "If the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions, the judge may not disturb the jury findings although his judgment might incline him the other way." *Id*. at 644 (quotation marks and citation omitted).

Defendant argues that impeachment of the victim's testimony established that she did not remember any of the details of the abuse, which allegedly occurred over a period of years, other than to state that defendant penetrated her vagina with his finger and penis. Defendant asserts that the lack of supporting medical evidence of abuse indicated his innocence and the victim's statement that she would look when he left her bedroom cannot be reconciled with her testimony that the abuse occurred in the dark. Defendant contends further that the victim did not know how often the abuse happened, could not recall whether defendant had an erection or ejaculated, and did not recall whether she stated that abuse occurred in 2015. Defendant also asserts that the victim's testimony that her sister did not awake during any of the incidents contradicted the victim's testimony that her sister did not sleep soundly most of the time. Defendant also points out that the victim told her mother that she lied when she told her about the earlier abuse at the home of her mother's boyfriend. Defendant argues that this evidence requires concluding that the great weight of the evidence went against his conviction.

Nothing about the victim's testimony, however, rises to the level of intrinsic implausibility, hopeless internal contradiction, or impeachment that would warrant overturning the jury's verdict. The prosecution presented evidence of defendant's statements to the victim during the Facebook messaging exchanges which included photos and videos of himself, all of which corroborated the victim's testimony. Evidence established that defendant questioned the victim about how it made

her feel when he had sexual relations with her and he told her that he liked rubbing her all over and missed it. Such evidence supported the victim's claims of sexual abuse by defendant.

Further, the record reflects that important details of the victim's statements, including her identification of defendant as her abuser and the manner in which defendant sexually abused her did not vary. Defendant's pointing out the possible inability of the victim to observe him because of darkness does not deprive the victim's testimony of "all probative value" or lead to a conclusion that a reasonable jury could not possibly believe it. Moreover, the victim's memory issues and inconsistency in testimony were presented to the jury. Despite inconsistencies in the victim's testimony or gaps in her memory, the evidence does not preponderate so heavily against the jury's verdict that it would be a serious miscarriage of justice to allow the verdict to stand. We are not persuaded that the trial court abused its discretion when it denied defendant's motion for a new trial. Even when "testimony supporting the verdict has been impeached, if it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of witnesses is for the jury." *Lemmon*, 456 Mich at 643 (quotation marks omitted). The record reflects that the evidence did not weigh against the jury's verdict, and the prosecution presented the jury sufficient evidence from which it could find defendant guilty of the charged offenses beyond a reasonable doubt. Therefore, defendant is not entitled to reversal of his convictions or a new trial.

Affirmed.

/s/ James Robert Redford
/s/ Jane M. Beckering
/s/ Michael J. Kelly

-13-